## STATE v. PAUL MYERS.

(Filed 4 June, 1954.)

**1. Receiving Stolen Goods § 6—**

Evidence of defendant's guilt of receiving stolen goods with knowledge that they had been stolen, *held* amply sufficient to overrule defendant's motion for nonsuit. G.S. 14-71.

**2. Criminal Law § 29b—**

Ordinarily, on a prosecution for a particular crime, evidence tending to show that defendant has committed other distinct, independent, or separate offenses is wholly impertinent and should be excluded.

**3. Same: Receiving Stolen Goods § 5—**

In a prosecution for receiving stolen goods with knowledge that they had been stolen, evidence tending to show that defendant on a previous occasion had accepted stolen merchandise from the same parties under such circumstances that defendant must have known that the merchandise had been stolen, is competent upon the question of defendant's guilty knowledge upon the occasion specified in the indictment.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Bobbitt, J.,* September Term 1953, FOR-SYTH. No error.

Criminal prosecution under bill of indictment in which it is charged that defendant did feloniously receive stolen property knowing at the time it was stolen in violation of G.S. 14-71.

About 1:00 or 2:00 a.m. on the night of 11 July 1953, J. D. Harrelson, Jimmy Lee Saunders—an infant of about 17 years of age—and two other associates broke and entered the Acadia Pharmacy in Winston-Salem. They took and carried away a large quantity of merchandise including radios, watches, cameras, cigarette lighters, a cash register, an adding machine, a typewriter, and various other articles described in the bill of indictment. They put the merchandise into a truck and Harrelson and Saunders carried it to defendant's home. The other two got off the truck at a church in the vicinity of defendant's home and waited in the church yard where they had theretofore stored other stolen property. Defendant declined to discuss the purchase of the property in the presence of the

young boy. Harrelson carried Saunders to the church and went back to defendant's home. Defendant then accepted the property and paid Harrelson $152.

On or about 15 June, Harrelson and associates broke and entered the Colonial Stores building and stole over $4,400 worth of merchandise. They left five cases of cigarettes in the church yard and stored the rest of the merchandise in an old tobacco barn. That night they delivered the cigarettes to defendant. Defendant went to look at the other property, and that night it was delivered to him, piled up in his home in such manner he said he could not tell what it was and could not say what he would give for it. He later paid $250.

Defendant told Harrelson and associates he would pay $50 each for 21-inch TV sets. He bought from them one 17-inch TV set about 2 :00 a.m. one night and paid $25 for it. He also told them "he could use a lot of little radios."

Defendant was told that the merchandise delivered in June came from the Colonial Stores and that the last came from the Acadia Pharmacy and was "hot stuff." He was also told where the TV set came from.

Defendant denied that he had ever received any property from the State's witnesses and otherwise contradicted their testimony.

The jury rendered a verdict of guilty as charged in the bill of indictment. The court pronounced judgment on the verdict and defendant appealed.

*Attorney-General McMullan, Assistant Attorney-General Moody, and Gerald F. White, Member of Staff, for the State.*
*P. W. Glidewell for defendant appellant.*

BARNHILL, C. J.   When we consider the evidence in the light most favorable to the State, as we are required to do in determining the merits of an exception to the refusal of the court to sustain a demurrer to the evidence under G.S. 15-173, a mere statement of the essential facts relied on by the State renders the conclusion that defendant received the property listed in the bill of indictment "knowing the same to have been feloniously stolen or taken," G.S. 14-71, so impelling that it requires no discussion or citation of authority. *S. v. Larkin,* 229 N.C. 126, 47 S.E. 2d 697; *S. v. Collins, ante,* p. 128. He received a large quantity of valuable merchandise at a grossly inadequate price; he refused to trade for the property in the presence of a young boy; he received it at night; and he was told that it was "hot stuff," a term commonly understood to mean stolen. He had theretofore inspected a large quantity of merchandise stored in an old barn and later purchased the same for a nominal sum. He accepted, at night, five cases of cigarettes, stored in an old church

yard. He took the cigarettes and other merchandise from young boys he had no cause to believe were lawfully engaged in the sale of merchandise in the manner here disclosed. He had theretofore received a large quantity of new merchandise taken from the Colonial Stores while it was piled up at night in his home like so much junk, so that he could not tell what it was or estimate its value. He was told each time from whence it came and that it was stolen. He solicited small radios and TV sets. That he was put on notice that the property was stolen would seem to be beyond debate. Indeed the defendant, in his brief, advances no argument to the contrary.

But defendant duly excepted to the evidence tending to show that he received the Colonial Stores property and the TV sets, and that he solicited the delivery of small radios. He did not, however, except to the evidence concerning his offer to purchase TV sets or to the evidence tending to show that he purchased a 17-inch set.

These exceptions are brought forward in his brief. He contends that this evidence tending to show that he had committed like offenses at other times was incompetent and highly prejudicial. We are, however, constrained to hold that they are without substantial merit.

Ordinarily, on a prosecution for a particular crime, evidence tending to show that defendant has committed other distinct, independent, or separate offenses is wholly impertinent and should be excluded. *S. v. McClain, ante,* p. 171.

But this general rule is subject to well-recognized and uniformly applied exceptions. These exceptions are fully discussed in *S. v. McClain, supra,* and the cases cited. What is there said needs no amplification, and mere repetition would serve no useful purpose. Suffice it to say that the testimony to which these assignments of error are directed was admissible on the question of defendant's guilty knowledge at the time he received the merchandise described in the bill of indictment.

In this connection we note that the trial judge, of his own volition, fully and correctly instructed the jury that it was to consider the same only in the event it found the property described in the bill of indictment was stolen and was thereafter received by defendant, "and then only as it may tend to bear and to throw light on the question as to whether the defendant, in receiving such stolen goods described in the bill of indictment, had guilty knowledge of the fact, that they were stolen goods and received such goods with felonious intent, it being for the jury to determine to what extent, if any, such evidence does bear and throw light on such question."

The other exceptive assignments of error fail to disclose cause for a new trial.

No error.

BOBBITT, J., took no part in the consideration or decision of this case.