STATE OF NORTH CAROLINA v. HAROLD W. JONES, ALIAS
CURTIS PROULX

No. 54

(Filed 10 February 1971)

**1. Criminal Law § 75— admissibility of confession — test of voluntariness**

   The test of admissibility of a confession is whether the statements made by the defendant were in fact voluntarily and understandingly made.

**2. Criminal Law § 75— subsequent interrogation of defendant who had indicated desire to remain silent**

   The rule in *Miranda v. Arizona* that the in-custody interrogation of a defendant must cease when the defendant indicates that he wishes to remain silent does not bar the subsequent interrogation of a defendant who, after having been fully advised of his constitutional rights, invites the police officer to resume talks with him.

**3. Criminal Law § 34— testimony that defendant was AWOL — harmless effect**

   The admission of defendant's statement, made at the time of his arrest for kidnapping and conspiracy to murder, that he was absent without leave from his military unit was not prejudicial to defendant on the trial for the two felonies, where, among other things, defendant admitted on cross-examination that he was AWOL at the time of the arrest.

APPEAL by defendant from *McKinnon, J.,* 6 July 1970 Regular Session of CUMBERLAND Superior Court. This case was docketed and argued at the Fall Term 1970 as No. 90.

James Ingland, Guy P. Webb, Terry Ingland, Barry T. Sheely, and defendant were charged in a bill of indictment with conspiracy to commit murder. In a separate bill of indictment James Ingland, Guy P. Webb and defendant were charged with kidnapping. The charges were consolidated for trial. This appeal relates only to the trial of Harold W. Jones, alias Curtis Proulx. Defendant through his counsel, William S. Geimer, Assistant Public Defender, Twelfth Judicial District, entered pleas of not guilty to both charges.

The evidence pertinent to decision in this case, in substance, is as follows:

Richard Fortner testified that he was invited to a house on Maiden Lane in Fayetteville by James and Terry Ingland.

After he arrived, he was sharpening his hunting knife, and the defendant obtained the knife on the pretext of showing him how to sharpen it. Defendant pointed the knife at him, another person in the room produced a knife, and still another individual laid a shotgun across his lap and pointed it at Fortner, saying, "You are a dead man." He was thereupon questioned about being a police informer. He was escorted from the house, walking between James Ingland, who carried a gun, and defendant, who carried a knife. Fortner was then placed in an automobile and carried to a wooded area on the outskirts of Fayetteville, where his hands were tied behind his back, and he was forced to lie face down on the ground. Sharp sticks were placed on either side of his neck so he was unable to move. Defendant remained on guard over Fortner until Terry Ingland and a man named "Spanky" returned about four and one-half hours later. When "Spanky" stated that Fortner was not the informer, he was released. Fortner called the Sheriff's Department shortly thereafter, and about three days later he was called to the Sheriff's Department where he identified defendant.

Detective Richard E. Washburn testified that he arrested defendant and brought him to the Sheriff's Department where he was identified by Fortner. Washburn was then questioned about statements made to him by defendant while defendant was in custody. Upon objection by defendant's counsel, the trial judge excused the jury and conducted a *voir dire* hearing. The officer testified that defendant had been advised of his rights upon his arrest on 5 May, at which time he stated, " . . . he would rather not talk about it right now." In response to a note by defendant, Washburn talked with defendant in the jail on 6 May, at which time the officer again advised him of his right to remain silent and his right to counsel as required by the Miranda decision. Defendant at that time told Washburn that his name was not Curtis Proulx, but that he was an AWOL soldier named Harold W. Jones. Defendant told him he was present at the incident on 30 April, but no details were then given because Washburn was called out on business. In response to notes from the jail, the officer again interviewed defendant on 7 May. Washburn stated that he took notes at all meetings with defendant and caused a statement to be typed which defendant signed before a magistrate on 7 May. Before defendant signed this statement on 7 May, both the officer and the magistrate advised defendant of his rights. He testified

that the waiver form which he signed on 6 May 1970 did not contain a section for an individual to indicate that he does not wish to make a statement. Washburn also stated that he made no promise or threats to defendant, but admitted that he told defendant that James Ingland had accused defendant of being a sadist. He told defendant about James Ingland's accusation two or three days after defendant had signed the statement. The witness stated that defendant did not request an attorney.

Defendant testified on *voir dire* and said that when he was taken into custody and carried to the Sheriff's Department he made a request for a lawyer, and that Detective Washburn in effect said that he had been through this stuff before and defendant had better start talking. Shortly thereafter, defendant was identified by Richard Fortner and taken to the jail. On the following day he made a request to see Detective Washburn in order to clear the matter of his proper name, and before he went into further details, the officer was called away. On the following day he made a statement to Detective Washburn and later, when a written statement was presented to him, he read the top part of it and it looked all right. He testified he did not think that he had read the whole statement, but at the request of Detective Washburn he signed at the bottom. Defendant further testified that at the meeting on 6 May at which he had requested to clear the matter of his name, Detective Washburn held up a piece of paper and indicated that it was a statement from others charged in the incident which put the blame on defendant and called him a sadist; that the reason he made a statement was to tell his side. He admitted that he had signed a waiver of rights form and a written statement.

At the conclusion of the *voir dire* the trial judge found facts, entered conclusions of law, and ruled as follows:

"That after the defendant was arrested upon the charge, he was warned of his right to remain silent; that any statement that he made could be used against him; that he had a right to counsel; that he had a right to have counsel appointed by the Court if indigent, and that he did not have to make a statement until counsel was appointed, and that if he began making a statement, he could stop answering questions at any time; that the defendant shortly after his arrest, stated that he had no statement to

make. Thereafter the defendant sent a message to Mr. Washburn that he did desire to make some statement to him and at that time made a statement, giving his correct name, explaining his use of another name and thereafter made a statement to Mr. Washburn, relating to the incident in question. That sometime later Mr. Washburn reduced to writing by typewriting, statement made by the defendant and the defendant at that time signed the waiver of rights and signed the statement in question before a magistrate. That no threats or violence or promise or coercion was offered by Mr. Washburn towards the defendant; that no promise of reward or leniency was made; and that such statements as were made by the defendant to Mr. Washburn were made voluntarily and freely, after warning as to his constitutional rights as to silence and as to an attorney. The Court finds the statement made by the defendant to be admissible in evidence and overruled the objection."

Thereafter Detective Washburn, over objection, testified before the jury to the statement given by defendant, which statement in effect corroborated the testimony of Richard Fortner. Included in this statement was testimony by Detective Washburn that defendant had stated to him that he was an AWOL soldier and had borrowed the identification and hospital release form from a man named Curtis Proulx before coming to Fayetteville.

Defendant testified before the jury to the effect that he was present on 30 April on Maiden Lane and also in a wooded area near Fayetteville; that Richard Fortner had voluntarily entered the automobile in search of one Wayne Eschelman, and that Richard Fortner agreed to stay with defendant in the woods while the others continued the search. He testified further that Richard Fortner became hysterical and he tied him up so he wouldn't run away. He stated that he never agreed to kill anyone or to abduct Richard Fortner from Maiden Lane.

The jury returned verdicts of guilty as charged on both charges. Defendant was sentenced for the term of not less than ten years nor more than fifteen years in the State's Prison on the charge of kidnapping, and upon the charge of conspiracy to commit murder defendant was sentenced to ten years in the State's Prison, to run concurrently with the term imposed in

the kidnapping charge. Defendant appealed from judgments entered. This case is before this Court pursuant to our general referral order effective 1 August 1970.

*Attorney General Morgan, Assistant Attorney General Webb, and Assistant Attorney General Harris for the State.*

*William S. Geimer, Assistant Public Defender, 12th Judicial District for defendant.*

BRANCH, Justice.

Defendant contends that the trial judge erred in admitting into evidence statements allegedly made by defendant to Detective Richard E. Washburn.

[1] The test of admissibility of a confession is whether the statements made by the defendant were in fact voluntary and understandingly made. *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1; *State v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572. In the case of *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561, Sharp, Justice, succinctly stated the procedure and rules concerning custodial confessions, as follows:

> " . . . When the State offers a confession in a criminal trial and defendant objects, the competency of the confession must be determined by the trial judge in a preliminary inquiry in the absence of the jury. *State v. Vickers*, 274 N.C. 311, 163 S.E. 2d 481. The trial judge hears the evidence, observes the demeanor of the witnesses, and resolves the question. *State v. Barber*, 268 N.C. 509, 151 S.E. 2d 51. His findings as to the voluntariness of the confession, and any other facts which determine whether it meets the requirements for admissibility, are conclusive if they are supported by competent evidence in the record. *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511; *State v. Gray*, 268 N.C. 69, 150 S.E. 2d 1; *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344; *State v. Keith*, 266 N.C. 263, 145 S.E. 2d 841."

Here, the trial judge properly excused the jury and in the jury's absence heard evidence from the State and defendant upon the question of the voluntariness of defendant's confession. The court made full findings of fact, which were incorporated into the record. The record contains substantial competent evidence supporting the trial court's findings, and the findings

---

State v. Jones

---

support the conclusion, "That such statements as were made by the defendant to Mr. Washburn were made voluntarily and freely. . . . "

**[2]** We are aware of the holding in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S.Ct. 1602, that if an individual ˈ in custody indicates in any manner, during the interrogation, that he wishes to remain silent, the interrogation must cease. This rule is not applicable to the facts of this case. True, upon being arrested defendant stated that "he would rather not talk about it right now." The record does not show that the officers attempted further questioning at that time. The statement made by defendant when he was arrested did not bar further questions, because defendant, after having been fully advised of his constitutional rights, not only freely consented to but invited the police officer to resume talks with him. See *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511.

The court correctly overruled defendant's objection and admitted statements made by defendant to Detective Washburn into evidence.

**[3]** Defendant contends that the trial judge committed prejudicial error by refusing to suppress that portion of defendant's statements containing evidence of uncharged misconduct. The uncharged misconduct referred to is indicated by the statement made by defendant to Detective Washburn that at the time of defendant's arrest he was absent without leave from his military unit without proper authority. Such action is a violation of the Uniform Code of Military Justice, 10 U.S.C.A. § 886.

It is the general rule that on a prosecution for a particular crime, evidence in chief which shows that defendant has committed other distinct, independent offenses is not admissible. *State v. Myers,* 240 N.C. 462, 82 S.E. 2d 213; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364. This rule is subject to many exceptions. *State v. McClain, supra,* and *State v. Harris,* 223 N.C. 697, 28 S.E. 2d 232.

In Stansbury, North Carolina Evidence, 2d Ed. § 91, p. 209, we find the following:

". . . It is submitted, however, that the rule is in fact a simple one which, when accurately stated, is subject to no exceptions: Evidence of other offenses is inadmissible

if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime."

In instant case defendant was charged in the bill of indictment as "Curtis Proulx, alias Harold Jones." The evidence under attack is relevant to show to the jury the reasons for the use of the alias and to correctly identify defendant by name. It is clear that the evidence was not offered to show the character of defendant or his disposition to commit an offense of the nature of the one charged. Defendant made no request for limiting instructions on this point. Further, we are unable to perceive prejudicial error in the admission of testimony showing commission of an act which might result in the limited punishment which can be imposed by a summary court martial, or by "company punishment," when other conduct admitted in the same statement tends to show defendant's participation in two distinct felonies. Prejudicial error is further negated by defendant's own statement on cross-examination that he was AWOL at the time of his arrest. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481.

The trial judge did not commit error in admitting this portion of defendant's statement.

No error.