STATE OF NORTH CAROLINA v. GEORGE BLAKLEY THOMAS

No. 8

(Filed 31 January 1977)

1. **Bill of Discovery § 6; Criminal Law § 60— fingerprint comparison made during trial — no disclosure pursuant to discovery order**

    The district attorney was not required, by virtue of a court order providing for disclosure of evidence in the State's possession, to submit to defendant a fingerprint comparison made during an overnight recess in the course of the trial, since the comparison in question did not exist at the time the court's order was entered; the district attorney made the comparison available to defendant promptly following his decision to use it in evidence; and defendant had opportunity to make timely objection to its introduction.

2. **Bill of Discovery § 6; Criminal Law § 60— fingerprint comparison — no disclosure by State — defendant given opportunity to make comparisons**

    Even if G.S. 15A-903 and the trial court's order based thereon required the district attorney to furnish defendant a fingerprint com-

parison made during a trial recess and the fingerprint cards themselves upon which the comparison was based, the district attorney's failure to do so gave defendant no right to have the fingerprint evidence excluded, since the trial judge offered defendant sufficient time at the close of the State's evidence to make any comparisons he deemed necessary for his defense, but defendant failed to avail himself of the offer. G.S. 15A-910.

**3. Constitutional Law § 30— withholding of evidence by State — information not helpful to defense**

Failure of the State to submit to defendant fingerprint lifts and inked impressions of defendant's fingerprints with which the lifts were compared did not violate defendant's due process rights where the information allegedly withheld was not "exonerative or helpful" to defendant but proved to be devastating to defendant's case.

DEFENDANT appeals from judgment of *Collier, J.,* 8 December 1975 Session, IREDELL Superior Court.

Defendant was charged in separate bills with armed robbery and the felony murder of Kathy Diane James on 8 August 1975 in Iredell County. Defendant was placed upon trial for armed robbery and, for reasons undisclosed, for second degree murder only.

The State's evidence tends to show that the body of Kathy Diane James was found by her husband around 7:45 p.m. on 8 August 1975 in the kitchen area of their home. The body was in a large pool of blood and had multiple wounds both front and back.

The defendant and the victim's husband had been together in the James home earlier that day. Defendant knew large sums of money were kept in the home. After the murder the sum of $400 to $500 was missing. It was kept in a Cherrios cereal box (S-19) which bore a fingerprint of defendant. A serrated steak knife (S-18) also bore defendant's fingerprint in blood on the blade. It was human blood of the same grouping as that of the victim. Expert medical testimony tends to show that the victim suffered three stab wounds in the back and one in the low neck, any one of which could have produced death. Death was caused by perforation of the heart by a weapon such as the steak knife, S-18.

SBI Agent Layton testified that he compared the fingerprints on State's Exhibit 18 and State's Exhibit 19 with the inked impressions of defendant's fingerprints contained on a

card marked State's Exhibit 38 and that in his opinion the same finger that made the latent lift on State's Exhibit 18 made the inked impressions of the right middle finger on State's Exhibit 38. Agent Layton further testified that he compared the latent lift taken from the cereal box (S-19) with the inked impression of defendant's fingerprints marked S-38 and that in his opinion the latent lift taken from the cereal box was made by defendant's left middle finger, the inked impression of which is shown on State's Exhibit 38.

Defendant testified in his own behalf. He denied returning to the James home, denied stabbing the deceased, and stated he never touched the steak knife (S-18) or any other knife in the James home and didn't know how his fingerprints got on the knife in blood. He further stated that when he learned the police were looking for him on 8 August 1975, he thought they intended to arrest him for bad checks which he had previously written and for that reason he fled to California to avoid arrest but returned voluntarily within a week. He also offered evidence of his good character.

Defendant was convicted of armed robbery and second degree murder. For reasons not disclosed, judgment was arrested in the armed robbery case. He was sentenced to life imprisonment for the second degree murder conviction and appealed to the Supreme Court.

*Rufus L. Edmisten, Attorney General, by Robert P. Gruber, Special Deputy Attorney General, for the State of North Carolina.*

*Robert E. McCarter, attorney for defendant appellant.*

HUSKINS, Justice.

Defendant's sole assignment of error relates to the admission, over objection, of the results of fingerprint comparisons made by SBI Agent Layton during an overnight recess in the course of the trial.

It appears from the record that defendant sent a letter to the district attorney on 27 August 1975 requesting voluntary discovery in certain areas as provided in G.S. 15A-902. The district attorney failed to comply with the request, and on 29 September 1975 defendant moved for a court order to force

compliance. On that same day the trial judge issued an order requiring, among other things, that the district attorney:

> "Permit the defendant to inspect and copy of [sic] photograph books, papers, documents, photographs, motion pictures, mechanical or electronic recordings, tangible objects, or copies of or portions thereof which are within the possession, custody or control of the State and which are material to the preparation of his defense, or are intended for use by the State as evidence at the trial, or were obtained from or belong to the defendant; . . .

> In addition, the above named parties shall permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence, or sample of it, available to the Solicitor if the State intends to offer said evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case."

This order substantially paraphrased G.S. 15A-903 which lists the information subject to disclosure under the new Criminal Procedure Act.

Under this order defense counsel received, about two weeks prior to trial, copies of the SBI fingerprint analysis which compared defendant's fingerprints on file with the Hickory Police Department (S-37) with lifts of latent prints from the knife and cereal box (S-18 and S-19). Counsel did not receive the lifts themselves on which the comparisons were based. The knife was in custody of the SBI Laboratory in Raleigh and not seen by defense counsel until shortly before trial. The cereal box was not seen by defendant until after the trial had started. Even so, defendant made no further requests for these items.

At the trial the judge excluded State's Exhibit 37 because the State had no witness present who could testify that he knew said exhibit (S-37) bore the inked impressions of defendant's fingerprints. However, the State had inked impressions of defendant's fingerprints taken by the Iredell County Sheriff's Department at the time of his arrest in this case, and these fingerprints of defendant were subsequently admitted into evidence without objection as State's Exhibit 38. During an overnight recess, SBI Agent Layton compared the latent fingerprints lifted from the steak knife and the Cherrios cereal box (S-18 and S-19) with defendant's inked impressions on State's Exhibit

State v. Thomas

38 and concluded that the prints on the knife and the cereal box were made by the defendant. It is the admission of this comparison, over objection, that defendant now assigns as error.

The record discloses that at the time defendant's objection was overruled and the fingerprint comparisons admitted, the trial judge stated:

"If you feel it necessary in order to present a fair defense for the defendant, we will adjourn at the end of the State's evidence for any comparisons you feel necessary to prepare for the defense. Other than that, I don't feel how I can rule any different. I think this was available to you all last night if you had requested it or pursued it."

[1] Under the discovery order the State had no duty to submit the second fingerprint comparison to defendant, i.e., the comparison of the latent lifts from the steak knife and cereal box (S-18 and S-19) with defendant's known inked impressions on State's Exhibit 38. This comparison did not exist prior to the trial. The State was only required to submit this comparison to defendant promptly following its decision to use the comparison. G.S. 15A-907. This the State did, and its action in that respect amounts to substantial compliance with the court order and the discovery statutes. The comparison was used the next day, and the record discloses that defense counsel knew of it prior to its admission and in time to make timely objection to its introduction.

[2] Judge Collier's order is couched in the broad general language of G.S. 15A-903 and does not specify any particular photograph, book, paper, document, or tangible object which the State shall permit the defendant to inspect and copy. Assuming arguendo, without conceding, that G.S. 15A-903 and Judge Collier's order based thereon required the district attorney to furnish defendant not only the fingerprint comparison of the prints lifted from the steak knife and cereal box with the known fingerprints of defendant shown on State's Exhibit 37 but also the fingerprint cards themselves upon which the comparison was based, the district attorney's failure to do so gives defendant no right to have the fingerprint evidence excluded. If a party fails to comply with a discovery order the court, in addition to exercising its contempt powers, may:

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(4) Enter other appropriate orders. G.S. 15A-910.

Imposition of these sanctions rests entirely within the discretion of the trial judge. The exercise of that discretion, absent abuse, is not reviewable on appeal. See 1 N. C. Index 3d, Appeal and Error, § 54 and cases cited. No abuse of discretion by the trial judge is made to appear. In fact, the judge offered defendant sufficient time at the close of the State's evidence to make any comparisons he deemed necessary for his defense. Thus defendant was granted one of the remedies authorized under G.S. 15A-910 and failed to avail himself of it. We hold, under the facts of this case, that this constituted sufficient compliance with the statute. The fact that defendant failed to avail himself of the offer strongly suggests the absence of any prejudice. Moreover, the rules of discovery contained in the Criminal Procedure Act were enacted by the General Assembly to ensure, insofar as possible, that defendants receive a fair trial and not be taken by surprise. They were not enacted to serve as mandatory rules of exclusion for trivial defects in the State's mode of compliance.

[3] Defendant further contends that the failure of the State to submit the lifts and inked impressions violated his due process rights, citing *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963), and *Giles v. Maryland,* 386 U.S. 66, 17 L.Ed. 2d 737, 87 S.Ct. 793 (1967). Those decisions are inapplicable to the facts of this case. There, the United States Supreme Court suggested, in split decisions, that where the State possessed evidence *helpful* to the defense, it must be disclosed to defense counsel to meet the due process requirement of the Fourteenth Amendment. Here, the information allegedly withheld illegally was *not helpful* to the defense and proved to be devastating to defendant's case. There is no suggestion that the State ever believed, or had any basis for a belief, that the latent lifts taken from the steak knife and the cereal box could be "exonerative or helpful" to defendant. There is no merit in this contention.

Defendant has been convicted in a trial free from prejudicial error. The verdict and judgment must therefore be upheld.