STATE OF NORTH CAROLINA v. RALPH POLK HILL, JR.

No. 124

(Filed 7 February 1978)

1. **Criminal Law §§ 75.3, 75.8— indication of wish to remain silent—admissibility of subsequent confession—confrontation of victims in hospital—no compulsion**

    The fact that on three occasions between 7:30 and 9:00 a.m. on the day of defendant's arrest he indicated a desire to remain silent did not render his subsequent confession that he committed two felonious assaults inadmissible where, on the three occasions between 7:30 and 9:00 a.m., his right to cut off questioning was scrupulously honored in that, once he expressed his wish to remain silent, he was asked no further questions by the officers who had asked whether he wanted to make a statement, and it was not until four hours later, after defendant had been identified by the assault victims, that defendant volunteered his confession to the assaults and was again read his rights before interrogation resumed. Furthermore, the fact that defendant volunteered a confession only after having confronted the assault victims in a hospital did not amount to a "subtle compulsion" of defendant to waive his Fifth Amendment rights where defendant requested to go to the hospital to see the victims after having expressed disbelief that they were still alive.

2. **Criminal Law § 75.7— incriminating statements—absence of interrogation**

    Defendant's incriminating statement to the sheriff that he had passed through the locale of the murder of a service station attendant was not rendered inadmissible by the fact that defendant had earlier exercised his right to remain silent when questioned about two felonious assaults in another county where the statement was not made during interrogation within the purview of *Miranda*, but rather was made during a casual conversation between the sheriff and defendant. Even if the sheriff's conversation with defendant constituted an in-custody interrogation, defendant's statement was still admissible where defendant was re-advised of his rights and waived his rights concerning interrogation about the felonious assaults just prior to his conversation with the sheriff, and the waiver applied to statements relevant to the murder because defendant was advised that "anything" he said could be used against him in a court of law.

3. **Criminal Law § 75.4— request for counsel—subsequent waiver—admissibility of confession**

    Even if defendant requested counsel when first advised of his rights, this would not make his subsequent statements inadmissible since defendant initiated the subsequent conversation with officers himself, was once again fully informed of his rights, and expressly waived the right to have counsel present.

4. **Criminal Law § 76.5— motion to suppress confession—entry of supplemental findings**

    The trial court did not err in entering supplemental findings of fact and conclusions of law concerning defendant's motion to suppress in-custody statements during the same term of court as the hearing on the motion and

State v. Hill

the original order, since both the supplemental and original orders held that the statements were admissible, and since the orders of the court were *in fieri* until the expiration of the term and the judge had the discretion to make such changes and modifications in them as he deemed wise and appropriate for the administration of justice.

5. **Criminal Law § 60.4— fingerprint—non-expert testimony—absence of prejudice**

Defendant was not prejudiced by the admission of testimony by an officer who was not an expert concerning a fingerprint taken from a cash register and identifying the print as belonging to deceased since the testimony was beneficial to defendant by establishing that his fingerprints were not found on the cash register.

6. **Constitutional Law § 30— discovery order—refusal to strike evidence not disclosed**

In this prosecution for the murder of a service station attendant, the trial court did not abuse its discretion in refusing to strike testimony by a witness that, when defendant forced his way into a trailer occupied by the witness and her sister, defendant told the witness that he had shot a seventeen-year-old boy that same morning, although the State did not disclose defendant's statement pursuant to a pretrial discovery order, where (1) defendant failed to object to the testimony when it was first offered but moved to strike it only after the witness and her sister had been cross-examined about the statement, and (2) defendant failed to indicate surprise and move for alternate sanctions under G.S. 15A-910.

7. **Constitutional Law § 30— failure to comply with discovery order—exclusion of evidence—discretion of court**

The exclusion of evidence for the reason that the party offering it has failed to comply with the statutes granting the right of discovery, or with an order issued pursuant thereto, rests in the discretion of the trial court.

8. **Criminal Law § 34.5; Homicide § 15— murder case—stipulation as to assault on other persons—physical condition of assault victims**

In this prosecution for the first degree murder of a service station attendant in which the State and defense counsel entered into a stipulation as to the facts relating to defendant's assault with a pistol on two other persons in another county on the same morning as the homicide, defendant was not prejudiced by an officer's testimony concerning the physical condition of the assault victims when he questioned them in the hospital where (1) the officer's testimony was far less explicit than the stipulation itself, and (2) additional testimony concerning the physical condition of the assault victims was admitted without objection.

9. **Criminal Law § 57— expert in firearms—positive rather than opinion testimony**

In this homicide prosecution, defendant was not prejudiced by the testimony of an expert in firearms identification that each gun leaves its individual characteristics peculiar to that weapon only, although the jury should

---

State v. Hill

---

have been informed that the testimony was only the opinion of the witness based on his personal observations.

**10. Searches and Seizures § 1— evidence obtained by warrantless search—absence of pretrial motion to suppress**

The trial court in a homicide case did not err in failing to conduct a hearing on defendant's motion to suppress a lay-away card in defendant's name for a .22 caliber pistol which was obtained by a warrantless search where the district attorney gave defense counsel notice that he intended to introduce this evidence more than 20 working days before trial, and defendant made no motion to suppress the evidence within 10 working days after receipt of the notice as required by G.S. 15A-975(b) although he had a reasonable opportunity to do so. Furthermore, defendant was not prejudiced by the admission of the lay-away card where other evidence, including a gun registration found in defendant's billfold, clearly showed that defendant owned the .22 caliber pistol.

**11. Homicide § 21.5— premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence of premeditation and deliberation to go to the jury on the question of defendant's guilt of first degree murder of a service station attendant where the evidence tended to show that deceased died as a result of five gunshot wounds inflicted in his head, neck and back by defendant; the location of the wounds indicates that deceased was shot from behind; the number of shots indicates excessive force and the dealing of lethal blows after the victim was felled; the fact that no weapon was found near deceased indicates that deceased was unarmed and did nothing to provoke the attack; and defendant's statement at another location shortly after deceased was shot that he had killed a seventeen-year-old boy, followed by his action in shooting two other persons in the back of the head after forcing them to lie on their stomachs, indicates a *modus operandi* and a complete lack of remorse for the shooting of the deceased.

**12. Homicide § 25.2— premeditation and deliberation—circumstantial evidence—instructions—no expression of opinion**

The trial court's instruction that premeditation and deliberation may be proven by proof of circumstances from which they can be inferred, "such as the brutal or vicious circumstances of the killing, if any, infliction of lethal wounds after the victim is felled or helpless, if that be the case," did not constitute an expression of opinion that these circumstances were present because of the court's failure to include other circumstances which could be considered, since the use of the words "if any" and "if that be the case" indicates otherwise, and since the charge as given was supported by the evidence in the case.

DEFENDANT appeals pursuant to G.S. 7A-27(a) from *Smith (Donald L.)*, *S.J.*, 23 May 1977 Session of DUPLIN Superior Court.

Defendant was tried and convicted of the first degree murder of Herman W. Rofe and was sentenced to life imprisonment.

The State offered evidence which tends to show the following: In the early morning of 27 July 1976 the dead body of Herman Rofe, an eighteen-year-old service station attendant, was discovered at the Tar Heel Exxon station on U.S. Highway 24 in Swansboro, Onslow County. At 3:00 a.m. on that morning, John Little, a customer, stopped at the twenty-four hour station in order to purchase cigarettes. He noticed that the interior lights of the establishment were out, the cash register drawer open, and no attendant in sight. He informed the owner and the Onslow County Sheriff's Department. The owner of the station, Donald Wallace, arrived and turned on the inside lights. In the third service bay of the station the body of Herman Rofe was discovered lying face down with five bullet wounds in his back, the back of his neck and head.

When the station owner left the attendant in charge of the station at 7:00 p.m. on the evening of 26 July, the cash register contained some $150 in cash. After the crime some change (it was not determined how much), credit card slips and checks were discovered in the register. Some $109 in cash was found in a paper bag on a shelf beneath the register. The owner's pistol also was found under a shelf near the cash register and apparently had not been fired.

Debbie Barker was at the station with the deceased attendant from 11:00 p.m., 26 July, until 1:30 a.m. on 27 July. A neighbor, Alton Brown, at about 2:30 a.m., "heard a bang, bang, bang, bang sound at the station but paid it no attention." He saw the lights in the station go off and observed a small compact car drive away.

On that same morning, at 6:00 a.m., the defendant broke into the mobile home of Dorothy Speller and her sister, Shirley Freeman, on Highway 17 in Bertie County, near Windsor, North Carolina, some 115 miles from the Exxon service station in Swansboro. The defendant demanded money from the two women, and when they told him they had but $2.35 he ordered them to lie on the floor on their stomachs. He then shot Shirley Freeman twice in the back of the head, and Dorothy Speller once in the head and once in the chest. Both women were hospitalized. Defendant was arrested for this unrelated offense at 7:30 a.m. that same morning in Beaufort County. At the time, he was driving a brown Ford Pinto. He was picked up by the Bertie County

sheriff and transported from Beaufort County to Bertie County. During the midmorning of 27 July defendant was taken to the hospital where the two girls had been admitted, and they identified him as their assailant. Thereafter, defendant told the police that he had traveled from Jacksonville the evening before, and had followed Highway 24 through Swansboro, and crossed over to Highway 17. At the time he was questioned, the Bertie County officers knew nothing of the homicide in Onslow County.

Defendant subsequently pled guilty to two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury on the persons of Ms. Freeman and Ms. Speller.

On 28 July 1976 defendant was charged with the murder of Herman Rofe in Onslow County. On 16 November 1976, on motion of defendant, this case was transferred to Duplin County for trial.

The pathologist who performed the autopsy on Rofe extracted five lead bullets from his body. These bullets were examined by an S.B.I. firearms expert and compared with the bullets taken from the persons of Ms. Freeman and Ms. Speller. The bullets found in Rofe were fired from the same pistol as those found in Ms. Freeman and Ms. Speller.

On 28 August 1976, one month after defendant's arrest for the assault on Ms. Freeman and Ms. Speller, Ms. Freeman, after learning that defendant was charged with the shooting of Rofe, told police that before defendant shot her he told her to be quiet because he had already killed a seventeen-year-old boy that morning and he would not mind killing her.

Other facts pertinent to decision are set out in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Roy A. Giles, Jr. for the State.*

*William J. Morgan for defendant appellant.*

MOORE, Justice.

Under his first assignment of error the defendant contends that the trial court erred in admitting evidence of defendant's confession to having committed the assaults on Dorothy Speller and Shirley Freeman in Bertie County, and evidence of defendant's statement to Sheriff Daniels that he (defendant) had trav-

eled from Jacksonville, North Carolina, via Route 24 through Swansboro, the locale of the murder for which defendant was tried in present case. Prior to trial counsel for defendant filed a motion to suppress any and all evidence of purported statements made by defendant. A pretrial hearing on said motion was held before Webb, J., at the 16 May 1977 Session of Onslow Superior Court. At the conclusion of the hearing Judge Webb found facts, entered conclusions of law, and ruled that the statements made by defendant were admissible into evidence.

On 19 May 1977, Judge Webb filed a supplementary order to his initial order, and therein made more extensive findings of fact. The judge found: that the defendant had been advised of his Miranda rights on three separate occasions on the morning of 27 July, and on all three occasions the defendant stated that he had not done anything and did not have anything to say to the officers; that upon being told that the two women were going to live the defendant stated that he wanted to go to the hospital and see the girls because he did not believe they were alive; that after having seen the girls and on leaving the hospital the defendant freely volunteered the statement that he was the man who had assaulted the women and that he was ready to make a statement; that Sheriff Daniels reminded defendant of his rights a fourth time and defendant stated that he did not want a lawyer present; that defendant was taken back to the Bertie County jail for interrogation by Agent Godley; that, while waiting for the agent, Sheriff Daniels and defendant engaged in casual conversation not connected with the Bertie County case, and that at this time, in response to the sheriff's question, defendant told the sheriff that he had traveled to Windsor that morning on Highway 24 through Swansboro; that Sheriff Daniels knew nothing of the murder of Herman Rofe in Swansboro at the time he asked defendant this question; that defendant was advised of his rights a fifth time by Agent Godley, and that defendant voluntarily waived them and stated he wished to make a statement without a lawyer; that defendant was later advised of his rights a sixth time by Deputy Cherry, and that he voluntarily waived these rights and confessed to the Bertie County crime to Deputy Cherry.

These findings of fact by the trial court are conclusive on appeal in that they are supported by competent evidence in the record. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975);

*State v. Haskins*, 278 N.C. 52, 178 S.E. 2d 610 (1971). Based on these facts, the judge correctly ruled that defendant's constitutional rights were not violated; "that he freely, understandingly, and voluntarily waived these rights and that the statement made by the defendant to Sheriff Daniels between 11:00 a.m. and 12:00 noon regarding coming through Swansboro; that the statement made to S.B.I. Agent Godley and Sheriff Daniels at approximately 1:00 p.m., and that the statement made to Deputy Sheriff Cherry at approximately 3:00 p.m. are admissible in evidence at the defendant's trial."

[1] Defendant argues, however, that his statements to officers should have been suppressed and bases this contention on the fact that on the morning of his arrest, between 7:30 a.m. and 9:00 a.m., he was advised of his rights on three separate occasions by three different officers, and on each occasion he exercised his Fifth Amendment right to remain silent. Defendant contends that his right to silence was infringed upon when he was taken to the hospital and forced to confront Ms. Freeman and Ms. Speller, that this amounts to "subtle compulsion," and that any and all subsequent statements made by him, and especially his alleged statement concerning his trip through Swansboro, were involuntarily made and in violation of his Fifth Amendment rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602. Defendant argues that *Miranda* requires that once an accused has indicated his desire to remain silent, not only must officers cease the immediate interrogation, but also officers cannot approach defendant at some later time, as in the present case, and begin anew their interrogation.

Our Court, in *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976), stated:

". . . The Miranda rule that in-custody interrogation of a defendant must cease when the defendant indicates he wishes to remain silent, or wishes to consult counsel, or both, does not bar a subsequent statement by a defendant who, after having been fully advised of his constitutional rights, freely and voluntarily waives his right to remain silent and his right to counsel and invites the officer to resume talks with him. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed. 2d 313 (1975); *State v. Jones*, 278 N.C. 88, 178 S.E. 2d

820 (1971); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968)."

Such an interpretation of *Miranda v. Arizona, supra,* was approved by the United States Supreme Court in *Michigan v. Mosley,* 423 U.S. 96, 46 L.Ed. 2d 313, 96 S.Ct. 321 (1975). There the Court held that the Miranda requirement, that police interrogation must cease when the person in custody indicates that he wishes to remain silent, does not create a *per se* proscription of indefinite duration upon any further questioning by any police officer at any time or place on any subject; nor does it impose a blanket prohibition against the taking or the admission in evidence of voluntary statements; nor, on the other hand, does it permit a resumption of interrogation after a momentary cessation. Instead, ". . . the admissibility of statements obtained after the person in custody has decided to remain silent depends under Miranda on whether his 'right to cut off questioning' was 'scrupulously honored.' "

In present case, defendant's own evidence does not support his contention that officers continued to interrogate him after he exercised his right to remain silent. On the three occasions between 7:30 a.m. and 9:00 a.m. his "right to cut off questioning" was "scrupulously honored" in that, once he expressed his wish to remain silent, he was asked no further questions by the officers who had asked whether he wanted to make a statement. In fact, it was not until four hours later, after defendant had been identified by the victims of his assault, that defendant volunteered his confession to that crime, and was once again read his rights before interrogation resumed. And, the fact that defendant volunteered a confession to this offense only after having confronted the victims of that crime in the hospital does not amount to a "subtle compulsion" of the defendant to waive his Fifth Amendment rights, for the trial court found that defendant *requested* to go to the hospital to see the victims of that crime after having expressed disbelief that they were still alive.

[2] As for defendant's incriminating statement to Sheriff Daniels that he had traveled to Windsor via Route 24 through Swansboro, this statement was not made during an "interrogation" under *Miranda*, but rather was made during the course of a casual conversation between the sheriff and defendant while awaiting the arrival of the S.B.I. agent who was to interrogate defendant

regarding the Bertie County offense. At the time defendant made this statement, neither Sheriff Daniels nor anyone else suspected defendant of the murder of Herman Rofe. And even if, for the sake of argument, we do consider Sheriff Daniels' conversation with defendant to be an "in-custody interrogation," such an admission is still admissible. The record clearly shows that the defendant was re-advised of his Miranda rights, and that he waived these rights just prior to his conversation with Sheriff Daniels. Although this was a waiver of rights concerning interrogation for the Bertie County crime, defendant was advised that *anything* he said could be used against him in a court of law.

Therefore, we hold that the lower court did not err in ruling that defendant's confession to the Bertie County offense, and his admission to having traveled through Swansboro on his way to Bertie County, were admissible into evidence.

[3] Under this same assignment of error defendant argues a violation of his Sixth Amendment right to counsel. At the hearing of the motion to suppress, defendant stated that he twice asked for a lawyer on the morning of 27 July. The State's evidence was, however, to the contrary. Based on this evidence the trial court found that, on being asked whether he wished to make a statement on the morning of 27 July, defendant had simply stated that he had not done anything and did not have anything to say. The court further found that the defendant expressly waived his right to counsel on the afternoon of 27 July, when he finally chose to make a statement. There being competent evidence in the record to support the judge's findings of fact and rulings of waiver and admissibility, such findings and rulings are conclusive on appeal. *State v. Jones*, 278 N.C. 88, 178 S.E. 2d 820 (1971); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968).

Even if we assume that the defendant did request counsel when first advised of his rights, this does not make his subsequent statements inadmissible since the defendant initiated the subsequent conversation with officers himself, was once again fully informed of his rights, and expressly waived the right to have counsel present. *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977); *State v. Jones, supra.*

This assignment is overruled.

[4] Under his second assignment of error, defendant contends that the trial court committed error in issuing and entering supplemental findings of fact and conclusions of law concerning defendant's motion to suppress evidence of his statements to officers. The pretrial hearing on defendant's motion to suppress was held on 16 May 1976 in Onslow County. At the conclusion of the hearing Judge Webb denied defendant's motion, and made findings of fact and entered conclusions of law to the effect that defendant's statements to officers were freely and voluntarily made after defendant had waived his right to have counsel present. Thereafter, on 19 May 1976, during the same term of court, Judge Webb entered additional findings of fact and conclusions of law with regard to this hearing. This second set of findings was not filed in Onslow County where the case arose, but rather was filed in Duplin County where the case had been removed for trial. Neither defendant nor his attorney was served with copies of these supplemental findings, and defendant argues that the supplemental order did not come to his attention until preparation of the record on appeal. Defendant contends that such a supplemental order is improper, and that the State should be bound by the original findings by the judge.

Since the supplemental findings consist mainly of a more extensive finding of facts, and contain the same order as that contained in the initial order of 16 May, which held that evidence of defendant's statements was admissible, we do not see how the defendant has been prejudiced by Judge Webb's supplemental findings. In any case, until the expiration of the term the orders and judgments of the court are *in fieri*, and the judge has the power, in his discretion, to make such changes and modifications in them as he may deem wise and appropriate for the administration of justice. *State v. Godwin*, 210 N.C. 447, 187 S.E. 560 (1936). *See also* 8 Strong, N.C. Index 3d, Judgments § 6. This assignment is overruled.

[5] Under his third assignment of error defendant argues that the trial court erred in failing to strike the opinion evidence of Officer Don Hunnings concerning a fingerprint taken from the cash register and identified by Hunnings as belonging to Herman Rofe, the deceased. Defendant argues that, because the State failed to qualify the witness as an expert in fingerprint identification, and because the witness himself testified that he did not consider

himself an expert, the evidence is incompetent opinion evidence, and is therefore prejudicial to defendant. Suffice it to say that defendant could not have been prejudiced by this testimony. The evidence, if anything, would be beneficial to the defendant, for it establishes that his fingerprints were not found on the cash register.

[6]   Shirley Freeman testified for the State that when defendant forced his way into the house trailer where she and her sister lived, he told her that he had shot a seventeen-year-old boy that same morning. Defendant argues that the trial court committed prejudicial error in denying defendant's motion to strike this testimony. He bases his contention on the State's failure to disclose this statement by defendant to the defendant prior to trial pursuant to his motion and an order for discovery under G.S. 15A-903. The State did not discover the existence of this evidence until mid-April 1976, just before trial and some six months after defendant's motion for voluntary discovery. Defendant contends that, under G.S. 15A-907, the State was under a continuing duty to disclose this evidence, and its failure to do so, coupled with the trial court's failure to strike the evidence at trial, resulted in prejudicial error to the defendant.

It must first be noted that defendant failed to object to this testimony when it was first offered. Only after Ms. Freeman had been cross-examined concerning the statement, and Ms. Speller had been recalled and cross-examined concerning whether she heard defendant make the statement, did the defendant move to strike the earlier testimony by Ms. Freeman concerning defendant's statement to her. The motion to strike was denied, and thereafter additional testimony concerning this statement was introduced without objection. It is well settled that an objection to the offer of evidence must be made in apt time, that is, as soon as the opponent has the opportunity to learn that the evidence is objectionable; and unless prompt objection is made, the opponent will be held to have waived it. *State v. Edwards*, 274 N.C. 431, 163 S.E. 2d 767 (1968). Furthermore, when evidence is admitted over objection but the same evidence has theretofore or thereafter been admitted without objection, the benefit of the objection is ordinarily lost. *State v. Carey*, 288 N.C. 254, 218 S.E. 2d 387 (1975); *State v. Pruitt*, 286 N.C. 442, 212 S.E. 2d 92 (1975).

[7] Additionally, exclusion of evidence is but one of several remedies provided by G.S. 15A-910. As this Court has held, the exclusion of evidence for the reason that the party offering it has failed to comply with the discovery statutes granting the right of discovery, or with an order issued pursuant thereto, rests in the discretion of the trial court. *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977); *State v. Thomas*, 291 N.C. 687, 231 S.E. 2d 585 (1977); *State v. Carter*, 289 N.C. 35, 220 S.E. 2d 313 (1975). The exercise of that discretion, absent abuse, is not reviewable on appeal. *State v. Thomas, supra; State v. Carter, supra.*

[6] No abuse of discretion has been shown in this case. There is no evidence of bad faith on the part of the State; and, considering defendant's failure to object, his searching cross-examination of the witness, and his failure to indicate surprise and move for alternate sanctions under G.S. 15A-910, we hold that the trial judge was within his discretion in denying defendant's motion to strike this evidence. This assignment is overruled.

[8] At trial the district attorney and defense attorney entered into a stipulation concerning the facts of the assault in Bertie County. The stipulation was entered to facilitate the trial, to limit the evidence of the Bertie County offense to the issue of the identity of defendant as perpetrator of the present crime, and to mitigate prejudice to defendant. Later in the trial S.B.I. Agent Godley was permitted to testify, over objection, concerning the physical condition of Shirley Freeman and Dorothy Speller when he questioned them in the hospital. Defendant objects that the allowance of this testimony was inflammatory and prejudicial to defendant, and that the State entered a stipulation with defendant in order to avoid the prejudicial effects of such testimony on the jury.

In the contested testimony Agent Godley simply stated that Ms. Freeman "was sedated, with bandages around her neck and face," and that "it was extremely difficult to talk with her." This testimony regarding her physical condition is far less explicit than the language of the stipulation itself, which stated that Freeman was shot twice in the back of the head, and Speller, once in the back of the head and once in the chest. Furthermore, additional testimony concerning the physical condition of the two women following the assault was admitted without objection. In

view of this, we do not see how defendant could have been prejudiced by the testimony in question.

[9]   Frederick M. Hurst, a special and senior technical agent for the State Bureau of Investigation, after stating his training and experience, was found, without objection, to be an expert in the field of firearms identification. During the course of Mr. Hurst's examination by the district attorney, he was asked: "Would any two separate weapons leave identical characteristics on the bullet that passes through its barrel." Defendant objected, and his objection was overruled. The witness answered: "Individual characteristics, no, sir. Each gun would leave their individual characteristics which would be common to that weapon and that weapon only." Defendant assigns the overruling of his objection as error, contending that the trial court committed prejudicial error in allowing opinion testimony by an expert concerning a subject not proper for opinion testimony.

      The testimony objected to is a statement of general opinion by an expert witness, and it is based on his general knowledge of his discipline. Such general opinions of fact are a proper subject for expert testimony so long as they are relevant and tend to lay the foundation for, explicate or justify that expert's opinion regarding the particular facts of the case. 1 Stansbury, N.C. Evidence § 135 (Brandis rev. 1973), says: "The requirement that expert opinion be based on facts personally known or hypothetically presented has been applied also to the witness's *general* knowledge which is an essential element of his qualification as an expert. . . ." The witness testified that he had undergone extensive training in firearms identification and ballistics, and had made "between thirty and forty thousand examinations and comparisons and possibly as high as fifty or sixty thousand." Based on his personal observation this witness could have testified that in his opinion each gun leaves its individual characteristics peculiar to that weapon and that weapon only. Such testimony would be a statement of his opinion, and the jury could only have considered it as such. "Some positive statements can, in the nature of things, be only expressions of opinion." *Teague v. Power Co.*, 258 N.C. 759, 129 S.E. 2d 507 (1963). The failure of the witness to inform the jury that the contested testimony was his opinion could not have been prejudicial to the defendant, especially in view of the fact that the witness testified,

State v. Hill

without objection, that the bullets taken from Rofe's body were fired from the same gun that fired the bullets removed from Dorothy Speller and Shirley Freeman. This assignment is overruled.

[10] Defendant next assigns as prejudicial error the failure of the trial court to grant a hearing on defendant's motion to suppress evidence obtained by a search without a search warrant, and its failure to suppress such evidence.

The evidence in question consisted of a gun box in which was found a lay-away card in defendant's name, bearing a serial number for a .22-caliber pistol, and two .22-caliber cartridges. On 5 October 1976 the district attorney gave defendant's counsel notice that he intended to introduce this evidence which was obtained as a result of a search without a warrant. Additionally, on 19 October 1976, in response to defendant's request for voluntary discovery, defendant's counsel was personally served with an answer, describing the evidence in detail and stating that the State intended to offer it into evidence.

G.S. 15A-975(a) provides that a motion to suppress evidence must be made prior to trial unless the defendant did not have a reasonable opportunity to make the motion prior to trial. G.S. 15A-976(b) provides that if the State gives notice not later than twenty working days before trial of its intention to use evidence, and if the evidence, as in this case, is of the type listed in G.S. 15A-975(b), the defendant may move to suppress the evidence *only if its motion is made not later than ten working days following receipt of the notice from the State.* Defendant's counsel did not comply with this statute in filing his motion to suppress. The motion was filed just prior to the jury selection in this case.

The trial judge found "that the defendant was in Onslow County Jail, [and] had ample opportunity to confer with Mr. Morgan [defendant's counsel] from October 17, the date of the service of the answer to Mr. Morgan's request for voluntary discovery, until the 15th day of November, that being approximately four weeks." Thereupon, the trial court ordered "that the motion to suppress and the request for voir dire is denied for failure to comply with G.S. 15A-975 and for the reason this court finds in its conclusion that the defendant had reasonable opportunity to move to suppress the evidence which is the subject of

this motion prior to November the 13, 1976." We think this ruling is correct.

We further fail to perceive how defendant could be prejudiced by the court's failure to suppress this evidence. Sheriff Daniels had previously testified without objection that Trooper Dudley, who arrested defendant, gave him a billfold and a box of .22 cartridges which he found in defendant's car. The billfold was taken from defendant. "There was a gun registration in the billfold and it identifies Ralph P. Hill of North Las Vegas, Nevada as registering a RGIND caliber .22 pistol number L552912. It is signed by Ralph P. Hill, Jr. and by Charles G. Darwin, Chief of Police. The wallet also contained a North Carolina driver's license for Ralph Polk Hill, Jr. and the address was in Jacksonville, North Carolina." This evidence clearly shows that the defendant was the owner of the pistol in question. The evidence which defendant sought to suppress, consisting of a box and a lay-away slip for the same pistol, was simply cumulative, and added nothing to the probative value of the evidence introduced without objection by defendant. Furthermore, it is a well recognized rule in this jurisdiction that the admission of testimony over objection is ordinarily harmless error when testimony of the same import has previously been admitted without objection or is thereafter introduced without objection. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975); *State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423 (1971); 1 Stansbury, N.C. Evidence § 30 (Brandis rev. 1973). Hence, the error, if any, in overruling defendant's motion to suppress this evidence was harmless. This assignment is overruled.

[11] Defendant next assigns as error the failure of the trial judge to sustain his motion to dismiss on the charge of first degree murder at the close of the State's evidence and at the close of all the evidence. The trial judge submitted the case to the jury on the charge of murder, with malice, after premeditation and deliberation, rather than murder committed in the perpetration of a robbery. Defendant contends, however, that there was not sufficient evidence of premeditation and deliberation to go to the jury on the question of first degree murder, and that his motion therefore should have been allowed.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296 (1976); *State v. Duboise,*

279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. denied*, 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133 (1971); G.S. 14-17.

Premeditation may be defined as thought beforehand for some length of time. " 'Deliberation means . . . an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose. . . .' *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769." *State v. Perry*, 276 N.C. 339, 172 S.E. 2d 541 (1970). *See State v. Davis*, *supra*. Ordinarily, premeditation and deliberation are not susceptible of proof by direct evidence, and therefore must usually be proved by circumstantial evidence. Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) the want of provocation on the part of deceased; (2) the conduct of defendant before and after the killing; (3) the vicious and brutal manner of the killing; and (4) the number of blows inflicted. *State v. Sparks*, 285 N.C. 631, 207 S.E. 2d 712 (1974); *State v. Perry, supra*.

When there is a motion for judgment as of nonsuit in a criminal case, the evidence is to be considered in the light most favorable to the State, and the State is entitled to every reasonable inference of fact deducible from the evidence. *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975); *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). If there is substantial evidence, whether direct, circumstantial or both, to support a finding that the offense charged has been committed and that defendant committed it, a case for the jury is made out and nonsuit should be denied. *State v. McKinney, supra; State v. Cook*, 273 N.C. 377, 160 S.E. 2d 49 (1968).

In present case, Dr. Walter D. Gable, a medical doctor specializing in the field of pathology, performed an autopsy upon deceased. Dr. Gable testified that deceased died as the result of five gunshot wounds in the head, neck and back. There was an entrance wound in the back of the head, an entrance wound on the right side of the back of the head, two entrance wounds in the neck and an entrance wound in the back with an exit in the chest. The location of the wounds indicates that deceased was shot from behind. The number of shots indicates excessive force and the dealing of lethal blows after the victim had been felled. The fact that no weapon was found near deceased indicates that deceased

was unarmed and did nothing to provoke the attack. Defendant's statement shortly thereafter that he had just killed a seventeen-year-old boy, followed by his action in shooting Shirley Freeman and Dorothy Mae Speller in the back of the head after forcing them to lie on their stomachs, indicates a deliberate *modus operandi* and a complete lack of remorse for the shooting of the deceased.

In our opinion, when taken in the light most favorable to the State, this evidence was sufficient to permit the jury to reasonably infer that defendant, with malice, after premeditation and deliberation, formed a fixed purpose to kill Rofe, and thereafter accomplished that purpose. We hold, therefore, that the State's evidence was sufficient to be submitted to the jury on the charge of first degree murder. *See State v. Perry, supra; State v. Faust, supra.*

[12] The trial judge charged the jury: "Now neither premeditation or deliberation are usually susceptible of direct proof. They may be proven by proof of circumstances [from] which they can be inferred such as the brutal or vicious circumstances of the killing, if any, infliction of lethal wounds after the victim is felled or is helpless, if that be the case." Defendant insists that, by mentioning only two circumstances which should be considered in inferring premeditation and deliberation, the trial judge expressed an opinion that these circumstances were present, and that the judge thereby expressed an opinion as to the facts in violation of G.S. 1-180 (repealed by Session Laws 1977, c. 711, s. 33, effective July 1, 1978). The use of the words "if any," and "if that be the case," indicates otherwise. Defendant further insists that the trial judge should have instructed the jury that they might consider all of the circumstances as set out in *State v. Buchanan*, 287 N.C. 408, 421, 215 S.E. 2d 80, 88 (1975). There the Court said: ". . . Among the circumstances to be considered by the jury in determining whether a killing was with premeditation and deliberation are: want of provocation on the part of the deceased; the conduct of defendant before and after the killing; the use of grossly excessive force; or the dealing of lethal blows after the deceased had been felled. . . ." However, in *State v. Buchanan, supra*, we also said that " '[a] trial judge should never give instructions to a jury which are not based upon a state of facts presented by some reasonable view of the evidence.' " And, as stated by Justice

Branch in *State v. Cameron*, 284 N.C. 165, 171, 200 S.E. 2d 186, 191 (1973), ". . . The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters, and a declaration and an application of the law arising on the evidence. [Citations omitted.]"

In the case at bar there was evidence from which the jury could find that defendant did kill the deceased in a brutal and vicious manner by shooting him five times in the back of his head, back and neck, and that some of the shots were fired after deceased was felled or helpless. Therefore, the charge as given was supported by the evidence and was not an expression of opinion by the trial judge. Moreover, it was in substantial accord with the quoted statement from *State v. Buchanan*, *supra*. Hence, this assignment is overruled.

Finally, defendant contends that the trial court erred in refusing to set aside the verdict of the jury as being contrary to the greater weight of the evidence. This motion is addressed to the discretion of the trial judge and is not reviewable on appeal in the absence of abuse of discretion. *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335 (1975); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974); 4 Strong, N.C. Index 3d, Criminal Law § 132, p. 681. No abuse of discretion appears in this case. Hence, this assignment is overruled.

We have carefully examined the entire record and conclude that defendant has had a fair trial, free from prejudicial error. The trial, verdict, and judgment must therefore be upheld.

No error.