*21 Justice NEWBY
dissenting.
At trial the State presented not one, but two, videotaped confessions by defendant, a third video of defendant at the crime scene explaining the details of the murder to police, and an abundance of corroborating physical evidence to support the confessions. In court defendant recanted his prior statements and testified that he fabricated the murder confessions to avoid longer prison sentences on several robbery charges. After hearing evidence and weighing the credibility of the witnesses, in less than four hours of deliberation, the jury found defendant guilty of first-degree murder. Despite overwhelming evidence of his guilt, the majority unconvincingly asserts that defendant’s claims of error were prejudicial requiring a new trial even under the deferential standard of review applicable to each submitted claim. Accordingly, I respectfully dissent.
The majority points to three alleged errors at trial: (1) the admission of victim character testimony from Randi Saldana’s sister, Shelly Nations; (2) the admission of too much evidence of defendant’s murder of Saldana under North Carolina Rule of Evidence 404(b), particularly the number of photographs of Saldana’s burned body; and (3) several comments made by the prosecutor during closing argument. I agree with the majority that the trial court impermissibly admitted Nations’s testimony; however, the conflicting evidence of Saldana’s lifestyle of drug use and prostitution rendered any effect of that testimony negligible. The remaining allegations do not establish error, much less prejudicial error.
In this case the pivotal question decided by the jury was the credibility of defendant’s numerous and detailed incriminatory statements to police against his conflicting testimony at trial. The State’s evidence included two separate videotaped interviews with detectives in which defendant confessed to choking to death both Heather Catterton and Randi Saldana. The State also presented a video of defendant showing detectives where he disposed of Catterton’s clothing and belongings following her murder and a video of defendant giving detectives a detailed walk-through of his mother’s home, where the two murders occurred. The scientific evidence was inconclusive. Seeking to undermine his pretrial assertions, defendant testified at trial that he initially confessed to the two murders in the hope of receiving leniency on several pending robbery charges. Defendant further testified that Catterton died in his mother’s home from a drug overdose and that Saldana died in the same home from voluntary, sex-related asphyxiation, both within a month of each other. His initial confessions and his later conflicting *22 trial testimony regarding the deaths of Catterton and Saldana could not have both been true.
The majority correctly holds that the trial court properly admitted evidence of Saldana’s minder under North Carolina Rules of Evidence 404(b) to show defendant acted with a common scheme, plan, or design. Defendant repeatedly confessed that he strangled Saldana and suffocated Catterton. Saldana’s autopsy report confirmed that she was strangled to death, while Catterton’s cause of death remained inconclusive. In response, the State presented Rule 404(b) evidence of Saldana’s murder by strangulation to prove that defendant, as he confessed, also intentionally suffocated Catterton. Saldana’s murder undoubtedly satisfies the Rule 404(b) criteria: Defendant confessed to both murders during the same interviews with police; both victims were young, white female prostitutes who exchanged sex with defendant for drugs; their circles of acquaintances overlapped significantly; both had sex with defendant in the same trailer; both died in his mother’s house; both of the victims’ bodies were temporarily stored in the basement of the home where they died and later dumped in rural areas of York County, South Carolina; defendant admitted that he killed both by either strangulation or suffocation; and lastly, both victims died within a month of each other. See State v. Howell, 343 N.C. 229, 236, 470 S.E.2d 38, 42 (1996) (upholding the admission of 404(b) evidence to prove the defendant’s identity, common plan, and lack of mistake when both victims were black prostitutes and both were picked up by the defendant in the same area, taken to the defendant’s bus at night, and bound, one with wire and the other with duct tape).
Notwithstanding the conclusion that the evidence was admissible under 404(b), the majority holds that the trial court abused its discretion under North Carolina Rule of Evidence 403 in admitting “an excessive amount” of the 404(b) evidence. To justify reversal, a trial court’s ruling on a Rule 403 determination must be “manifestly unsupported by reason or ... so arbitrary that it could not have been the result of a reasoned decision.” State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988) (citation omitted). The majority classifies the trial court’s decision as necessarily arbitrary, but gives no guidance to the trial court upon retrial on where to draw the line, how much evidence is too much, or what particular evidence is prohibited.
“Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” N.C. R. *23 Evid. 403. In the context of the Rule 403 balancing test, the prosecution is entitled to put on its case and should not be penalized because the acts a defendant is accused of committing are particularly gruesome. The United States Supreme Court has noted:
When a juror’s duty does seem hard, the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law’s moral underpinnings and a juror’s obligation to sit in judgment. Thus, the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant’s legal fault.
Old Chief v. United States, 519 U.S. 172, 187-88, 117 S. Ct. 644, 653-54, 136 L. Ed. 2d 574, 592 (1997). This “persuasive power of the concrete and particular” is especially important in capital cases in which grisly details arise quite frequently. Id. at 187, 117 S. Ct. at 653, 136 L. Ed. 2d at 592. The more relevant the State’s evidence is, the more likely it is to persuade the jury of a defendant’s guilt of the particular crime charged. Rule 403 does not prohibit probative evidence simply because it strongly influences the jury’s verdict or the State relies on it heavily at trial.
The majority ignores the highly probative nature of the Saldana 404(b) evidence and then fails to identify any unfair prejudice that substantially outweighs its probative value. Against defendant’s assertions that he contrived the portion of his videotaped confessions describing how he killed Catterton and Saldana, the Saldana 404(b) evidence serves to establish that Saldana was in fact strangled. The physical evidence of Saldana’s murder corroborates defendant’s confession that he killed her and, considering the striking similarities in the two murders, discredits defendant’s recantation of his confession to the Catterton murder. Defendant entwined details of the two murders throughout his taped confessions, making the Saldana 404(b) evidence an unavoidable and significant part of the State’s case-in-chief. Further, many of the State’s witnesses were familiar with both murders and testified as to their knowledge. Nonetheless, ignoring the interrelationship of the two murder investigations, the majority believes the highly probative 404(b) evidence is unfairly prejudicial in part simply because the State referenced it on seven of the eight days it presented evidence at trial. Without any support from our case law, the majority creates a vague, *24 unworkable rule that limits admissible evidence under Rule 403 and discourages the State from relying on probative evidence. In so concluding, the majority fails to adhere to the deferential standard of review for abuse of discretion.
Whether photographic evidence “is more probative than prejudicial and what constitutes an excessive number of photographs in the light of the illustrative value of each ... lies within the discretion of the trial court.” Hennis, 323 N.C. at 285, 372 S.E.2d at 527 (citation omitted). “Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.” Id. at 284, 372 S.E.2d at 526 (citations omitted). “When a photograph add[s] nothing to the State’s case, then its probative value is nil, and nothing remains but its tendency to prejudice.” Id. at 286, 372 S.E.2d at 527 (internal citations and quotation marks omitted). “This Court has rarely held the use of photographic evidence to be unfairly prejudicial_” State v. Robinson, 327 N.C. 346, 357, 395 S.E.2d 402, 409 (1990).
The majority states in conclusory fashion that the trial court erred in admitting some of the photographs of Saldana’s body because those photographs add nothing of probative value under Rule 403. A careful analysis of the photographs refutes this conclusion. Of the fifteen photographs at issue, the first three photographs (Exhibits 45, 46, and 47) depicted Saldana’s burned body lying substantially covered in debris in a wooded area. Two of those photographs were taken from a distance and from different angles. The third photograph was a close-up of the body. The witness who first found the body used these three photographs to show the rural nature of the area and the body’s appearance upon its discovery. This testimony corroborated defendant’s videotaped confession regarding his disposal of Saldana’s body.
The State submitted the next six photographs to illustrate the testimony of a sheriff’s deputy who responded to the call that a body had been found. Four of those photographs were of Saldana’s body: Exhibit 50 shows a close-up of the wire found wrapped around Saldana’s legs, which defendant confessed to using; Exhibits 51 and 52 further show the wire wrapped around Saldana’s legs, and Exhibit 53 shows Saldana’s burned right arm and hand. Though unpleasant to view, these photographs were highly probative in connecting the physical evidence of Saldana’s body’s condition to defendant’s detailed confession, particularly that he wrapped a lamp cord around Saldana’s legs.
*25 The remaining ten photographs in question, used to clarify testimony from the coroner and Saldana’s sister, showed Saldana’s body after it had been cleaned of debris and prepared for autopsy on the coroner’s examining table. Before the coroner testified, the trial court considered, and excluded upon defendant’s objection, two of these photographs — Exhibits 60 and 61 — as unnecessarily cumulative. Exhibits 57, 58, 59, 62, and 63 aided the coroner’s testimony to show the victim’s neck injuries and corroborated defendant’s videotaped confession that he choked Saldana to death. Exhibits 58, 59, 62, and 63, though graphic, showed the victim’s head and torso injuries from different viewpoints. The last photograph focused on the injury to the victim’s forehead as described by defendant in his videotaped confession and trial testimony. Three photographs, Exhibits 54, 55, and 56, served to identify the victim by focusing on unique tattoos located on relatively undamaged parts of her body. These depictions were not gruesome and did not present a high risk of prejudice. Saldana’s sister described the tattoos, referring to these three photographs during her testimony. These highly probative, standard autopsy photographs, though unsettling, confirm the victim’s identity and the condition of her body, allowing the triers of fact to assess the veracity of defendant’s confessions and the similarities in the victims’ conditions.
These fifteen photographs of the body helped identify the victim and corroborated defendant’s pretrial confessions that he strangled, burned, and bound Saldana, and disposed of the body in a rural, wooded area. This Court defers to a trial court’s exercise of discretion in allowing such photographs. In State v. Robinson we upheld the trial court’s admission of twenty-three photographs, eleven of which showed a victim’s burned body, his autopsy, or the burned car containing the victim. 327 N.C. at 355, 395 S.E.2d at 407. We concluded that the photographs were not needlessly repetitive, that competent testimony accompanied each photograph, and that each portrayed “ ‘somewhat different scenes.’ ” Id. at 358, 395 S.E.2d at 409 (quoting State v. Dollar, 292 N.C. 344, 355, 233 S.E.2d 521, 527 (1977)). Compare State v. Waring, 364 N.C. 443, 497, 701 S.E.2d 615, 649 (2010) (finding no abuse of discretion when the trial court admitted eighteen autopsy photographs because the photographs “were not unnecessarily repetitive, were not unduly gruesome or inflammatory, and illustrated [witness and defendant testimony]”), cert. denied, _ U.S. _, 132 S. Ct. 132, 181 L. Ed. 2d 53 (2001), with Hennis, 323 N.C. at 282, 372 S.E.2d at 525 (finding prejudicial error when, inter alia, thirty-five images measuring three feet, ten inches by five feet, six inches showing three murder victims’ decomposing bodies and repetitive photographs of the same neck injury on all three bodies were projected on *26 the wall directly above the defendant’s head). Under a straightforward application of our precedent, the trial court did not abuse its discretion in admitting the fifteen photographs here, each serving a different illustrative purpose.
In its last finding of error, the majority insists the State made inappropriate statements to the jury in its closing argument. “It is well settled that the arguments of counsel are left largely to the control and discretion of the trial judge and that counsel will be granted wide latitude in the argument of hotly contested cases.” State v. Williams, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (citations omitted). “Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom.” Id. (citations omitted). We review for abuse of discretion objections made to a party’s closing argument, State v. Walters, 357 N.C. 68, 101, 588 S.E.2d 344, 364, cert. denied, 540 U.S. 971, 124 S. Ct. 442, 157 L. Ed. 320 (2003), but “the impropriety of the argument must be gross indeed” for us to hold that the trial court abused its discretion by not “correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he heard it,” State v. Rogers, 355 N.C. 420, 462, 562 S.E.2d 859, 885 (2002) (citation and quotation marks omitted).
The majority contends that it was grossly improper for the trial court not to intervene unilaterally when the State, in the majority’s view, accused defense counsel of suborning perjury and defendant of being a liar. The majority’s mischaracterization ignores our deferential standard of review and disregards defendant’s and defense counsel’s own declarations. While I agree with the majority that the State strayed too far in its closing argument by saying that “defendant, along with his two attorneys, c[a]me together to try and create some sort of story,” the trial court properly sustained defendant’s objection to those remarks. Nowhere does the State argue that defendant’s attorneys told him to he in his testimony.
Defendant’s major premise here was that his trial testimony was true and that his videotaped confessions were false. In its closing argument, the State submitted that defendant came up with “this elaborate tale as to what took place” after “get[ting] legal advi[c]e from his attorneys.” There is nothing grossly improper in the State suggesting that defense counsel provided legal advice to defendant or that defendant contemplated recanting his confessions after his attorneys informed him of the legal consequences of confessing to the murders. Furthermore, defendant himself testified to being manipulative and untruthful. On cross-examination, defendant freely admitted to *27 manipulating the justice system during the over twenty-five years he had been in and out of prison:
Q [from the State], You manipulated the system?
A. Well, I mean, I choose to call it working the system. Manipulation is, you know, in the eye of the beholder. I don’t know. I just work the system. I do whatever is best for me. If you want to call it manipulation, then that’s fine, I guess.
Defense counsel reinforced defendant’s admission during closing argument: “[Defendant is] manipulative, he lies, he tells things to get things-His family says he lies-He lies to bolster himself.” Perhaps the one fact both sides agreed on throughout the trial was that defendant was not always truthful. The majority concludes, contrary to precedent, that the trial court erred in allowing the State to agree with the assertions repeatedly made by defendant and his counsel to this effect. Williams, 317 N.C. at 481, 346 S.E.2d at 410 (“Counsel is permitted to argue the facts which have been presented....”).
The majority has identified three potential errors over the course of a five-week trial and summarily concludes that these alleged errors when considered together prejudiced defendant’s trial. The identification of alleged errors, however, is not reversible per se; defendant must demonstrate that “there is a reasonable possibility that, had the errorfs] in question not been committed, a different result would have been reached at the trial.” N.C.G.S. § 15A-1443(a) (2013). See State v. Badgett, 361 N.C. 234, 248, 644 S.E.2d 206, 215, cert. denied, 552 U.S. 997, 128 S. Ct. 502, 169 L. Ed. 2d 351 (2007) (concluding admission of the defendant’s prior conviction was harmless when the “defendant has failed to demonstrate any reasonable possibility that the jury would have reached a different result had the evidence been excluded”); State v. DeLeonardo, 315 N.C. 762, 772, 340 S.E.2d 350, 357 (1986) (“Even assuming error arguendo, defendant has failed to meet his burden of showing that a reasonable possibility exists, that had the evidence . .. not been admitted, a different result would have been reached at his trial.”).
As stated earlier, I agree the trial court erred by admitting Nations’s victim character testimony but the conflicting evidence of Saldana’s lifestyle of drug use and prostitution negated any effect of that testimony. Thus, defendant must show the two additional alleged errors, the admission of “an excessive amount” of 404(b) evidence and several comments by the prosecutor during closing argument, created a “reasonable possibility” of changing the jury’s verdict. Regarding the 404(b) evidence, *28 the trial court continually instructed the jury, often multiple times a day, that the evidence
is offered, and you may consider it, for the purpose of showing that there existed in the mind of the defendant a plan, scheme, system, or design involving the crime charged in this case, and you may not consider it for any other purpose in regard to the trial of this case.
The trial court repeatedly and consistently urged the jury to use the evidence only as instructed throughout the trial:
[L]et me put it this way: Evidence has been received tending to show that Randi Saldana died under circumstances that have some similarity to the charge against the defendant in the case that we are trying, and the case we’re trying is the one which he is charged with the murder of Heather Catterton. Now, this evidence was received, and will be received and considered by you, solely for the purpose of showing that the defendant had existing in his mind a plan, scheme, system, or design involving the crime charged in this case.
[[Image here]]
I want you to understand that if you believe this evidence, you may consider it but only for the limited purpose for which it has been received or may be received subsequently. You may not consider such evidence about the Saldana matter for any>other purpose.
[[Image here]]
Now, members of the jury, at this point I’m going to give you an instruction that’s just simply the same instruction I gave you before. That information previously received through the evidence, testimony in regard to Randi Saldana, has a limited purpose ....
[[Image here]]
This evidence has been received solely for the purpose of showing any of the following: That the defendant had a motive for the commission of the crime charged in this case; that the defendant had the intent which is a necessary element of the crime charged in this case; that there existed in the mind of the defendant a plan, scheme, *29 system, or design involving the crime charged in this case; that the defendant had the opportunity to commit the crime in this case; or the absence of accident in this case.
The state contends, and the defendant denies, that the evidence on this matter shows these things in regard to the offense charged, that is, the murder of Heather Catterton. It is for you to decide what, in fact, the evidence does show. If you believe this evidence, you may consider it, but only for the limited purposes for which it has been received.
Similarly, during closing argument, when defendant objected to the prosecutor’s statement, the trial court “sustained] the objection as to the argument and the odd comment.”
Most importantly, here there is overwhelming evidence of defendant’s guilt, including the multiple detailed confessions to the murder he provided shortly after his arrest. An abundance of corroborating physical evidence supported defendant’s confessions. Defendant’s only defense was that he had fabricated his confessions. The jury took little time, less than four hours, to reject defendant’s recantation and find him guilty. Defendant has failed to carry his burden of showing any reasonable possibility that the jury would have reached a different result absent the alleged errors.
The trial court determines the competency of evidence, including witness testimony, while the jury weighs the credibility of the evidence presented. State v. Witherspoon, 210 N.C. 647, 649, 188 S.E. 111, 112 (1936) (citation omitted). Here the jury found credible defendant’s taped confessions, not his trial testimony. Defendant has failed to show that absent the alleged errors the trial’s outcome would have been different. This Court should uphold the jury’s determination of defendant’s guilt. Accordingly, I respectfully dissent.
Chief Justice MARTIN joins in this dissenting opinion.