STATE OF NORTH CAROLINA v. DAVID LEE DOLLAR

No. 22

(Filed 14 April 1977)

1. Criminal Law § 29.2— mental capacity to plead or stand trial — confinement of defendant to hospital

When the capacity of one charged with a criminal offense to proceed is questioned, the court may direct the commitment of the defendant to a State mental health facility for observation or may appoint one or more impartial medical experts to conduct such examination and may make appropriate temporary orders for the confinement or security of the defendant pending the ruling of the court upon the question of his capacity to proceed; therefore, the trial court did not err in transferring defendant, who was under examination to determine his mental competency to plead and stand trial, from Dorothea Dix Hospital to the hospital at Central Prison upon learning that defendant's brother planned to break into Dorothea Dix and release defendant. G.S. 15A-1002.

2. Criminal Law § 29.1— mental capacity to plead or stand trial — procedure

Where defendant moved for a psychiatric examination to determine his mental competency to plead and stand trial, the court committed him to Dorothea Dix Hospital, and the hospital staff reported to the court that defendant did have mental capacity to proceed, the trial court erred in proceeding with the trial without conducting any further hearing for the determination of that question; however, defendant waived his right to such a hearing by failing before trial to request a hearing or otherwise indicate any adherence to his contention of lack of mental capacity. G.S. 15A-1002(b)(3).

3. Criminal Law § 15.1— pretrial publicity — change of venue properly denied

The trial court in a first degree murder prosecution did not err in denying defendant's motion for change of venue on account of local pretrial publicity where jurors apparently were found who were not aware of, or were not affected by, the publicity of which defendant complained, and nothing in the record indicated that, prior to verdict, defendant was not content with the twelve jurors who found him guilty.

4. Bill of Discovery § 6— State's witnesses — pretrial disclosure not required

The State is not presently required to disclose to the defendant in advance of trial the names of its prospective witnesses.

5. Bill of Discovery § 6— proof of gun ownership — pretrial disclosure not required

G.S. 15A-903 does not support defendant's contention in this first degree murder prosecution that he was entitled to pretrial disclosure

State v. Dollar

of how the State intended to prove the victim's ownership of the guns sold by defendant and his companion.

6. **Criminal Law § 75.7— noncustodial interrogation — necessity for Miranda warnings**

The trial court in a first degree murder prosecution did not err in allowing into evidence testimony concerning statements made by defendant without benefit of the *Miranda* warnings to investigating officers concerning an earlier conversation between defendant and others present in a store during which defendant remarked that he knew who killed the victims, since, at the time defendant was interrogated by the officers, he was not in custody nor was he then a suspect.

7. **Constitutional Law § 49; Criminal Law § 75.8— request for counsel — subsequent waiver — admissibility of confession**

Defendant's earlier request for counsel did not make inadmissible a confession made at a subsequent conversation with the investigating officers, initiated by the defendant himself, at which he was again fully informed of his constitutional rights and at which he expressly waived the right to have counsel present.

8. **Robbery § 6; Criminal Law §§ 102.12, 138— counsel's statement of punishment to jury — State's objection — sustaining not prejudicial error**

The trial court in an armed robbery and murder prosecution erred in sustaining the State's objection to defense counsel's reading to the jury of the armed robbery statute, including the provision prescribing punishment, but such error was harmless beyond a reasonable doubt since the desired information was brought to the attention of the jury which was not instructed to disregard it, and judgment was arrested upon the charge of armed robbery anyway.

9. **Criminal Law § 130— expression of opinion by juror — no mistrial**

The trial court in a felony murder prosecution did not err in denying defendant's motion for mistrial on the ground that jurors already selected and others of the panel awaiting interrogation were influenced by the statement of one prospective juror that he had formed an opinion that defendant was guilty because defendant's alleged companion in the crimes charged had committed suicide and the defendant had tried to do so.

10. **Bill of Discovery § 6— photographs not supplied to defendant — admissibility**

The exclusion of evidence for the reason that the party offering it has failed to comply with the statutes granting the right of discovery, or with an order of the court issued pursuant thereto rests in the discretion of the trial court. The court did not abuse its discretion in allowing into evidence illustrative photographs which had not been supplied to defendant pursuant to the order for discovery where the district attorney did not know of the existence of the photographs until the morning on which the witness was called to testify. G.S. 15A-910.

State v. Dollar

**11. Homicide § 20— photographs for illustration — number not excessive**

The trial court in a felony murder prosecution did not abuse its discretion in allowing into evidence an allegedly excessive number of photographs depicting the victims' bodies and surrounding area, since each photograph illustrated a portion of the testimony of the witness not illustrated by other photographs.

**12. Homicide § 21— felony murder — doctor performing autopsy — testimony insufficient basis for nonsuit**

Defendant in a felony murder prosecution was not entitled to nonsuit on the basis of an opinion expressed by the doctor who performed the autopsy on the victims that they could not have been killed prior to the day after the dates alleged in the bills of indictment, since the evidence of the State, taken to be true, revealed two ruthless, brutal murders in the perpetration of a planned robbery by the defendant and his companion.

**13. Homicide § 30; Robbery § 5— felony murder — armed robbery or common law robbery immaterial**

In a prosecution for murder committed during the perpetration of an armed robbery where all the evidence was that each victim was struck on the head with a weapon of such nature and used with such force as to make it a deadly weapon, the trial court was not required to submit to the jury as a possible verdict defendant's guilt of common law robbery; furthermore, defendant was not prejudiced since he received no sentence for the robbery, judgment being arrested as to that charge, and a murder committed in the perpetration of any robbery, whether armed robbery or common law robbery, is murder in the first degree. G.S. 14-17.

**14. Criminal Law § 9.1; Homicide § 25— defendant at scene of crime — defendant as active participant — jury instructions**

There is no merit in defendant's contention that the trial court failed to instruct the jury that if it found the defendant was merely present at the scene of the crime that circumstance alone would not justify a verdict of guilty, since the court did so instruct the jury, but, in any event, defendant's own statement, properly admitted in evidence, showed that he actively participated in the planning of the robbery and its execution.

**15. Constitutional Law § 80; Homicide § 31— felony murder — life sentence substituted for death penalty**

Sentence of life imprisonment is substituted for the death penalty in this felony murder prosecution.

APPEAL by defendant from *Walker, J.,* at the 31 May 1976 Mixed Session of WILKES.

Upon indictments, proper in form, the defendant was convicted of armed robbery, the first degree murder of Thurmond Royal and the first degree murder of Lecie Royal, the wife of

State v. Dollar

Thurmond Royal. The State having proceeded upon the theory of felony murder, judgment was arrested in the armed robbery case. The two murder cases were consolidated for judgment and the defendant was sentenced to death.

Prior to trial the defendant moved to suppress evidence of a statement made by him, while in custody, to investigating officers at approximately 12:30 p.m. on 30 March 1976. The court, prior to trial, conducted a hearing on this motion. At that hearing, the defendant did not testify and offered no evidence except the testimony of his mother to the effect that she had no telephone in her home; a printed statement of the constitutional rights of one interrogated while in custody, which statement was signed by the defendant at 12:19 a.m. on 30 March 1976, and upon which he stated that he did want a lawyer; and an order of the Judge of the District Court, dated 31 March 1976, appointing counsel for the defendant. The evidence for the State at this hearing was to the following effect:

The defendant, who lived near the Royals and had had contacts with Mr. Royal, was interrogated on four occasions by officers investigating the murders. At the time of the first two interrogations, he was not in custody and was not a suspect. Nevertheless, at the outset of the first interrogation, which was general in nature, the officer advised him of his constitutional rights as stated by the Supreme Court of the United States in *Miranda v. Arizona,* 384 U.S. 436. The second interrogation was the result of the defendant's having indicated, in a general conversation at a store in the vicinity, that he knew who had killed Mr. and Mrs. Royal. The third interrogation occurred shortly after midnight on 30 March 1976 following the defendant's arrest. At that time his constitutional rights, as so stated by the Supreme Court of the United States in the Miranda case, were read to him and, as above indicated, he signed this statement of his rights and stated thereon that he did want a lawyer. That interrogation thereupon ceased.

Approximately twelve hours later, the Sheriff of Wilkes County and his Chief Deputy went to the defendant's jail cell, having been told that the defendant wished to talk to them. They asked if he did wish to talk with them and he replied that he did. He told the officers, "I am willing to talk now if you will get me some marijuana." They refused to do so but stated that if he wanted to talk with them they would go to

the office, sit down and listen to him. He told the officers that he understood he had the right to an attorney but did not want one. The two officers and the defendant then went to the Chief Deputy's office where the Chief Deputy read to the defendant his constitutional rights as declared in the Miranda case. The defendant stated that he understood all of those rights and that he wanted to talk with the officers without the presence of a lawyer. He thereupon signed a waiver of the above mentioned rights. He was approximately 25 years of age, did not appear sleepy or confused and was coherent. He complained of no physical ailment. The officers promised him nothing and did not threaten him. He then made a statement to the officers, the substance of which is set forth below.

At the conclusion of the hearing, the court made full findings of fact, including the finding that the statement in question was made freely and voluntarily after the defendant had been fully advised of his above mentioned constitutional rights and had signed a waiver thereof, including his right to the presence of counsel at the interrogation, and denied the motion to suppress evidence of the statement.

When, at the trial, in the presence of the jury, evidence of this statement was offered, the defendant objected and the court again, in the absence of the jury, conducted a voir dire at which no other evidence was offered by the defendant. The court again examined the Chief Deputy Sheriff with reference to the circumstances under which the statement was made. At the conclusion of this voir dire, the court again made full findings of fact, including the finding that the statement was freely and voluntarily given after the defendant had been fully advised of his above mentioned constitutional rights. The objection to the introduction of the evidence was thereupon overruled.

The evidence for the State at the trial was to the following effect:

On the morning of 9 January 1976, the daughter and son-in-law of Mr. and Mrs. Royal went to their home. They found Mrs. Royal dead upon the living room floor and, shortly thereafter, found Mr. Royal dead in a tool shed near the house. Upon the floor of one of the bedrooms there was a pile of bed quilts and there were blood stains on the front door and other areas of the house, including the inside of a gun cabinet. Suspended from the door of the gun cabinet was a chain. This chain could

be connected with a hasp so as to fasten the door only by use of a lock which, together with a group of keys, was found lying upon a sewing machine in front of the cabinet. One of the keys opened the lock. In each case, the cause of death was a blow upon the head with a blunt instrument which produced a comminuted fracture of the skull.

Mr. Royal had in the gun cabinet a large collection of antique guns, both "long guns" and pistols. He also carried upon his person at all times a small Derringer, a present from one of his sons. The indictments charged that Mr. and Mrs. Royal were murdered on 7 January 1976. Prior to the middle of January 1976, the defendant and his companion, Prosser, sold the Derringer and two other pistols, each identified by a son of Mr. Royal who had given the gun to his father. The three pistols were introduced in evidence, an uninterrupted chain of possession from the defendant and Prosser to the witness, through whom they were offered in evidence, being established.

In the above mentioned statement to the Sheriff of Wilkes County and his Chief Deputy, made on 30 March 1976, at approximately 12:30 p.m., the defendant said that he and Prosser went to the Royal home for the purpose of robbing Mr. Royal of his gun collection. The defendant enticed Mr. Royal out of the house by requesting the loan of a tow bar so that the defendant could move his car. When Mr. Royal went to the tool shed, Prosser struck him. They then went into the house and Prosser, catching Mrs. Royal off guard, hit her in the head. The defendant, who had previously visited in the Royal home and knew where the guns were kept, showed Prosser the gun cabinet which was locked. Prosser went back to Mr. Royal's body and got the key to the lock and the Derringer. They then wrapped the guns in quilts and the defendant took them out to their car. They drove back to Prosser's house where, the next day, they sold the guns.

Prosser, while in custody, committed suicide.

*Rufus L. Edmisten, Attorney General, by Patricia B. Hodulick, Associate Attorney, and Elizabeth C. Bunting, Associate Attorney, for the State.*

*E. James Moore for defendant.*

LAKE, Justice.

[1]  Prior to trial the defendant moved for a psychiatric examination to determine his mental competency to plead to the indictment and to stand trial thereon. For this purpose, he was committed to Dorothea Dix Hospital. During the term of that commitment, the court, being advised that the defendant's brother planned to break into the hospital and release the defendant, ordered that he be transferred to the hospital at Central Prison and that the psychiatric examination be continued there. This was done, the examination being conducted by the staff of the Dorothea Dix Hospital.

The defendant's contention that this transfer to the prison hospital was error is without merit. When the capacity of one charged with a criminal offense to proceed is questioned, the court may direct the commitment of the defendant to a State mental health facility for observation or may appoint one or more impartial medical experts to conduct such examination and may make appropriate temporary orders for the confinement or security of the defendant pending the ruling of the court upon the question of his capacity to proceed. G.S. 15A-1002; *State v. Washington,* 283 N.C. 175, 185, 195 S.E. 2d 534 (1973).

[2]  The defendant next assigns as error the failure of the court to hold a hearing on the question of his ability to plead and stand trial. Following the above mentioned psychiatric examination, the hospital staff made a report to the court indicating that the defendant did have mental capacity to plead to the indictment and to stand trial. Without conducting any further hearing for the determination of that question, the court proceeded with the trial. This was contrary to G.S. 15A-1002(b)(3) which specifically requires that when the capacity of the defendant to proceed is questioned, the court must hold a hearing to determine that question, which hearing must be held, upon reasonable notice to the defendant and the prosecutor, after the psychiatric examination if one is ordered by the court. However, we think it obvious that, under the circumstances of this case, the defendant has waived his right to such hearing. *State v. Young,* 291 N.C. 562, 231 S.E. 2d 577 (decided January 31, 1977).

The report of the psychiatric examination is admissible in evidence at such hearing. G.S. 15A-1002(b)(1 and 2). The statute further provides that other evidence may be introduced

at the hearing by the State and by the defendant. The record in the present case shows that the report of the examining psychiatrist was to the effect that the defendant did have the requisite mental capacity to plead to the indictment and to stand trial. Nothing in the record indicates that before going to trial the defendant requested a hearing or otherwise indicated any adherence to his contention of lack of mental capacity. He offered no evidence on the question. See: *State v. Washington, supra.* See also: *State v. Propst,* 274 N.C. 62, 68, 161 S.E. 2d 560 (1968), as to the law of this State upon this question prior to the enactment of the foregoing statute.

[3] The defendant next assigns as error the court's denial of his motion for change of venue on account of local pretrial publicity. It is well established that this is a matter in the sound discretion of the trial court. *State v. Brewer,* 289 N.C. 644, 655, 224 S.E. 2d 551 (1976); *State v. Alford,* 289 N.C. 372, 378, 222 S.E. 2d 222 (1976); *State v. Harrill,* 289 N.C. 186, 190, 221 S.E. 2d 325 (1976). Nothing in the present record indicates an abuse of discretion in this ruling. The record does not show the defendant's examination of prospective jurors nor does it show that he exhausted the peremptory challenges allowed him by law. Apparently, jurors were found who were not aware of, or were not affected by, the publicity of which the defendant complains and nothing in the record indicates that, prior to verdict, he was not content with the twelve jurors who found him guilty.

[4, 5] We find no merit in the defendant's Assignments of Error 5, 6 and 7 relating to the denial of portions of his pretrial motions for discovery. The State is not presently required to disclose to the defendant in advance of trial the names of its prospective witnesses. *State v. Carter,* 289 N.C. 35, 220 S.E. 2d 313 (1975). However, a list of the State's witnesses was supplied to defendant's counsel prior to the commencement of the selection of the jury. G.S. 15A-903 specifies certain types of information which the defendant is entitled to obtain by discovery procedure. The statute does not support the defendant's contention that he was entitled to pretrial disclosure of how the State intended to prove Mr. Royal's ownership of the guns sold by the defendant and his companion. As to the defendant's request for information as to evidence obtained by the State as a result of the defendant's statement, it is sufficient

to note that the record does not indicate any such evidence was so discovered.

There is likewise no merit in the defendant's Assignments of Error 8, 9 and 10 with reference to the overruling of his pretrial motions to suppress statements made by the defendant to the investigating officers and evidence obtained by the officers as the result of such statements. As above noted, the record does not indicate any evidence introduced at the trial was so obtained. Furthermore, the statements themselves were properly obtained and were properly admitted in evidence. The rule that evidence, which is fruit of a poisoned tree, is not admissible has no application where, as here, the tree in question was not poisoned and it bore no fruit.

**[6]** The defendant's statement to the investigating officers, at the time of the second interrogation, related to a general conversation had by the defendant with others present in a store, in which conversation the defendant remarked that he knew who killed Mr. and Mrs. Royal. That statement, apparently, was not made to police officers. Upon learning of it, the investigating officers would have been exceedingly remiss had they not interrogated the defendant about it. At such interrogation the defendant was not warned of his constitutional rights. However, he was not in custody nor was he then a suspect. The court conducted a pretrial voir dire upon the defendant's motion to suppress evidence of his statement to the officers concerning this conversation. It found that the defendant was not in custody but was free to terminate the interview and leave at will, as, in fact, he did immediately after the conclusion of the interrogation. The rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), relating to the admissibility of confessions made without prior warning of the declarant's constitutional rights, applies only to statements while in custody. The finding of the trial court that the defendant was not in custody at the time he made the statement in question, being supported by evidence in the record, elicited on a properly conducted voir dire, is conclusive. *State v. Smith,* 278 N.C. 36, 41, 178 S.E. 2d 597 (1970) ; *State v. Wright,* 274 N.C. 84, 93, 161 S.E. 2d 581 (1968) ; *State v. Gray,* 268 N.C. 69, 78, 150 S.E. 2d 1 (1966).

The motion to suppress the statement made by the defendant to investigating officers on the afternoon of 30 March 1976

was also properly denied. Both upon the motion to suppress and upon the defendant's objection to the introduction of the evidence at the trial, the court conducted a full voir dire and made detailed findings of fact which are supported completely by the evidence for the State. At neither hearing did the defendant offer any evidence whatever. It is true that, some eight hours prior to this conversation with the officers, the defendant had stated he wanted an attorney. When he did so, the interrogation then being conducted ceased immediately. The subsequent interrogation, eight hours later, was initiated by the defendant, not the officers. Prior to making the confession, the defendant was once more warned of his constitutional rights, including his right to counsel, and he expressly stated that he was willing to talk to the officers without the presence of an attorney. The evidence indicates no threats and no promises were made or other inducements given to cause the defendant to confess his guilt. Here also, the findings of fact by the court, being supported by evidence, are conclusive. *State v. Smith, supra; State v. Wright, supra; State v. Gray, supra.*

[7] The defendant's earlier request for counsel did not make inadmissible the confession made at the subsequent conversation with the investigating officers, initiated by the defendant, himself, at which he was again fully informed of his constitutional rights and at which he expressly waived the right to have counsel present. *State v. Jones,* 278 N.C. 88, 93, 178 S.E. 2d 820 (1971). See also: *State v. Bishop,* 272 N.C. 283, 296, 158 S.E. 2d 511 (1968).

[8] In his argument to the jury, counsel for the defendant read the statute relating to armed robbery, including the provision thereof prescribing the punishment, this being G.S. 14-87. The trial court sustained the objection of the State. In this there was error since counsel was entitled to so inform the jury. *State v. McMorris,* 290 N.C. 286, 225 S.E. 2d 553 (1976). This error was, however, harmless beyond a reasonable doubt. The desired information was thus brought to the attention of the jury and the jury was not instructed to disregard it or that it was erroneous. Furthermore, upon the charge of armed robbery, judgment was arrested.

[9] The defendant next assigns as error the denial of his motion for a mistrial. During the selection of the jury, a prospective juror stated that he had formed an opinion that the

defendant was guilty because the defendant's alleged companion had committed suicide and the defendant had tried to do so. The defendant contends that this response, blurted out by the prospective juror in the presence of jurors already selected and others of the panel awaiting interrogation, was so prejudicial that its effect could not be removed by instructions of the judge. In *State v. Jarrette*, 284 N.C. 625, 639, 202 S.E. 2d 721 (1974), reversed as to the imposition of the death penalty only, _____ U.S. ___ , 96 S.Ct. 3205, 49 L.Ed. 2d 1206, a juror stated on voir dire that he had read in the newspaper that the defendant, charged with rape, murder and kidnapping, had been declared an outlaw. We held that there was no error in the denial of the defendant's motion for mistrial on account of this statement made in the presence of other selected and prospective jurors. As we there stated: "A mistrial is not lightly granted. The granting of the defendant's motion therefor rests largely in the discretion of the trial judge. *State v. Self*, 280 N.C. 665, 187 S.E. 2d 93; Strong, N. C. Index 2d, Criminal Law, § 128."

[10]  The defendant assigns as error the overruling of his objections to the introduction in evidence of certain photographs admitted to illustrate the testimony of the doctor who performed autopsies upon the bodies of Mr. and Mrs. Royal. The ground for this objection was that these photographs had not been supplied to the defendant pursuant to the order for discovery. The record establishes that the District Attorney did not know of the existence of these photographs until the morning on which the witness was called to testify. Furthermore, the exclusion of evidence for the reason that the party offering it has failed to comply with the statutes granting the right of discovery, or with an order of the court issued pursuant thereto, rests in the discretion of the trial court. G.S. 15A-910.

[11]  The defendant next assigns as error the overruling of his objections to the introduction in evidence of certain other photographs of the bodies of Mr. and Mrs. Royal as they lay in the living room of the home and in the tool shed and of the areas surrounding them. The defendant contends that these photographs were excessive in number. We find no merit in this contention. The photographs were not merely repetitious, each being useful to illustrate a portion of the testimony of the witness not illustrated by other photographs. It is well settled that the mere fact that a photograph is gruesome, revolting or horrible does not prevent its use by a witness to illustrate his testi-

mony. *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971) ; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), reversed as to death penalty only, 403 U.S. 948, 91 S.Ct. 2283, 29 L.Ed. 2d 859; *State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967) ; *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948). Nevertheless, an excessive number of such photographs may not properly be admitted in evidence. *State v. Mercer,* 275 N.C. 108, 165 S.E. 2d 328 (1969) ; *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). What constitutes an excessive number of photographs must be left largely to the discretion of the trial court in the light of their respective illustrative values. The photographs in the present case were not merely repetitious. They portrayed somewhat different scenes and we find in the use of the total number no abuse of discretion.

[12] It is elementary that, upon a motion for judgment as in the case of nonsuit in a criminal action, the evidence must be considered in the light most favorable to the State, and the State must be given the benefit of every inference of fact that may reasonably be drawn therefrom. *State v. Holton,* 284 N.C. 391, 200 S.E. 2d 612 (1973) ; *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). The fact that the doctor who performed the autopsy expressed the opinion that Mr. and Mrs. Royal could not have been killed prior to the day after the dates alleged in the bills of indictment does not entitle the defendant to such judgment of nonsuit upon the present record. G.S. 15-155; *State v. Holton, supra; State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972) ; *State v. Gore,* 207 N.C. 618, 178 S.E. 209 (1935). The evidence of the State, taken to be true, reveals two ruthless, brutal murders in the perpetration of a planned robbery by the defendant and his companion. This assignment of error is overruled.

[13] The defendant next contends that the trial court erred in failing to submit to the jury, as a possible verdict, the defendant's guilt of common law robbery. There is no evidence whatever in the record to show common law robbery. All of the evidence is that each of the victims was struck on the head with a weapon of such nature and used with such force as to make it a deadly weapon. Thus, the robbery committed was armed robbery, not common law robbery. As this Court, speaking through Justice Sharp, now Chief Justice, said in *State v. Lee,* 282 N.C. 566, 569, 193 S.E. 2d 705 (1973) :

"The essential difference between armed robbery and common law robbery is that the former is accomplished by the use or threatened use of a firearm or other dangerous weapon whereby the life of a person is endangered or threatened. G.S. 14-87 (1969) ; *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971). In a prosecution for armed robbery the court is not required to submit the lesser included offense of common law robbery unless there is evidence of defendant's guilt of that crime. If the State's evidence shows an armed robbery as charged in the indictment and there is no conflicting evidence *relating to the elements* of the crime charged an instruction on common law robbery is not required."

Furthermore, in the present case, the defendant received no sentence for the robbery, judgment being arrested as to that charge. A murder committed in the perpetration of any robbery, whether *armed robbery* or *common law robbery,* is murder in the first degree. G.S. 14-17. Therefore, even had there been error in the failure of the court to submit guilt of common law robbery as a possible verdict, the defendant was in no way prejudiced thereby.

**[14]** Finally, there is no merit in the defendant's contention that the court failed to instruct the jury that if it found the defendant was merely present at the scene of the crime that circumstance alone would not justify a verdict of his guilt thereof. Actually, the court did so instruct the jury, but, in any event, the defendant's own statement, properly admitted in evidence, shows that he actively participated in the planning of the robbery and in its execution. This being true, it is immaterial that it was his companion who struck the fatal blows. *State v. Scott,* 289 N.C. 712, 224 S.E. 2d 185 (1976) ; *State v. Rankin,* 284 N.C. 219, 200 S.E. 2d 182 (1973).

**[15]** We have carefully examined all of the defendant's assignments of error relating to his convictions upon the charges of armed robbery and first degree murder and find no merit in any of them. However, since we are compelled to accept as correct interpretations placed by the Supreme Court of the United States upon provisions of the United States Constitution and to comply therewith in applying those provisions to the statutes of this State, and since that Court, in *Woodson v. North Carolina,* \_\_\_\_ U.S. \_\_\_\_, 96 S.Ct. 2978, 49 L.Ed. 2d 944 (1976), held

---

that the provisions of G.S. 14-17, imposing the death penalty for murder in the first degree, violate the Constitution of the United States, and so may not be given effect by the courts of this State, we must hold that there is merit in the defendant's attack upon the death sentence imposed upon him by reason of his convictions of murder in the first degree. Consequently, the judgment of the Superior Court sentencing the defendant to death upon these verdicts, must be, and is hereby, vacated and, by authority of the provisions of the Session Laws of 1973, Ch. 1201, § 7 (1974 Session), a sentence to imprisonment for life must be substituted therefor. *State v. Cawthorn,* 290 N.C. 639, 650, 227 S.E. 2d 528 (1976).

This case is, therefore, remanded to the Superior Court of Wilkes County with directions (1) that the presiding judge, without requiring the presence of the defendant, enter a judgment imposing upon the defendant a sentence of life imprisonment for the first degree murders of which he has been convicted, in lieu of the sentence of death heretofore imposed upon him; and (2) that, in accordance with this judgment, the Clerk of the Superior Court issue a new commitment in substitution for the commitment heretofore issued. It is further ordered that the Clerk furnish to the defendant and to his attorney a copy of the judgment and commitment as revised pursuant to this opinion.

No error in the verdict.

Death sentence vacated.