IN THE SUPREME COURT OF NORTH CAROLINA

No. 44A23

Filed 13 December 2024

STATE OF NORTH CAROLINA

v.

JAMEY LAMONT WILKINS

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 287 N.C. App. 343 (2022), finding no error in a judgment entered on 29 July 2021 by Judge Edwin G. Wilson Jr. in Superior Court, Caswell County. Heard in the Supreme Court on 25 September 2024.

*Joshua H. Stein, Attorney General, by Keith T. Clayton, Special Deputy Attorney General, for the State-appellee.*

*Glenn Gerding, Appellate Defender, by Wyatt Orsbon, Assistant Appellate Defender, for defendant-appellant.*

NEWBY, Chief Justice.

In this case we decide whether defendant waived his statutory right to a competency hearing when he failed to assert the right at trial. The statutory right, which this Court has considered waivable for nearly half a century, is different from the nonwaivable right to a competency hearing under the Federal Constitution. *See, e.g., State v. Young*, 291 N.C. 562, 566, 231 S.E.2d 577, 580 (1977). Defendant concedes that his appeal is based solely on the statutory right and that he did not raise the issue of competency at trial despite ample opportunity to do so. We therefore

hold that defendant waived his statutory right to a competency hearing and affirm the decision of the Court of Appeals.

On 11 February 2018, deputies with the Caswell County Sheriff's Office stopped an SUV upon suspicion that its occupants had thrown contraband over the walls of a nearby prison yard. The deputies ordered both the driver and the passenger, defendant, to step out of the SUV. The driver consented to a search of the vehicle, which revealed two footballs that had been split open, filled with drugs, and duct-taped back together. During the stop, defendant became "irate" with the deputies for searching the vehicle and with the driver for consenting to the search. Defendant was arrested and charged with several offenses, including possession with intent to sell or distribute the seized drugs, attempting to provide contraband to an inmate, and habitual felon status. He was detained at the Caswell County Jail while awaiting trial.

After about three weeks in custody, defendant was involved in an altercation at the jail. A detention officer reported defendant for approaching him with clenched fists and threatening "to whip [his] a[--]." Defendant was charged with assaulting a government employee and communicating threats.

Ten days after the incident at the jail, defendant's court-appointed counsel filed an unopposed motion questioning defendant's competency to stand trial. The motion, which counsel filed at defendant's request, stated that defendant believed he was "losing his grip on reality." Counsel referenced defendant's "odd behavior while in

custody" and noted that defendant experienced rapid mood swings, spoke to him in elevated tones, and "[did] not completely comprehend his situation." No record evidence suggests that defendant suffered from mental health issues before or after these events.

At a hearing on 15 March 2018—the same day defendant's counsel filed his motion—the trial court granted defendant's request to have his competency evaluated. Because defendant remained in custody, the trial court noted that he would need transportation to and from the evaluation.

That same day, the trial court signed a form ordering a medical evaluation of defendant's competency and designating Central Regional Hospital in Butner as the evaluating facility. Paragraph 6 of the form order provided two options for defendant's transportation, each of which was listed next to a blank box for marking the appropriate selection:

> a. The Sheriff is Ordered to transport the defendant and all relevant documents to the Certified Local Forensic Evaluator designated by the Local Management Entity and return the defendant afterwards.

> b. The defendant shall present himself/herself to the Certified Local Forensic Evaluator designated by the Local Management Entity for evaluation.

Because defendant was still in custody, the trial court selected the first option.

Following the entry of the order, defendant continued to threaten the safety of officers, other inmates, and himself. At this point, defendant had not posted bond. Accordingly, on 20 March 2018, the trial court ordered the sheriff's office to transport

defendant to Central Prison in Raleigh for safekeeping. The sheriff's office completed the transfer the next day.

On 28 March 2018—one week after the transfer to Central Prison and roughly two weeks after the trial court ordered a competency evaluation—defendant posted bond and was released from custody. Defendant did not undergo a competency evaluation prior to his release, nor did he seek one after.

Almost a year later, on 19 March 2019, the trial court held a hearing on the State's proposed plea offer. Defendant's counsel, the same court-appointed attorney who filed the motion for a competency evaluation, rejected the State's offer and entered a not guilty plea on defendant's behalf. Counsel did not mention the unfulfilled evaluation order, address defendant's mental health, or otherwise acknowledge the competency issue. The State did not raise the issue either.

The State subsequently offered another plea deal. On 13 May 2019, two months after the first hearing, the trial court held a hearing on the new offer. At the second hearing, defendant's counsel again rejected the deal without any mention of the outstanding evaluation order, defendant's competency, or defendant's mental health in general. Defendant's counsel instead seemed focused on securing the return of defendant's two cell phones, which the State had seized as evidence.

Defendant's trial began on 28 July 2021, nearly three-and-a-half years since his arrest and more than two years after the second hearing. Nothing in the record indicates that defendant took any steps to seek a competency evaluation or address

his mental health whatsoever over his three-plus years out on bond. He did, however, make an independent choice to replace his court-appointed counsel with a team of private attorneys about two months before the trial started.

Over the course of trial, neither defendant nor his new attorneys mentioned defendant's competency. When the State rested its case-in-chief, defendant moved to dismiss the charges for lack of sufficient evidence, again making no reference to competency. The trial court denied the motion. Defendant presented no evidence of his own and chose not to testify. In confirming that choice, the trial court and defendant had the following exchange:

> THE COURT: Stand up just a minute, Mr. Wilkins. So this is your time to testify if you'd like. You need to talk to your attorney and think about that. . . . Do you have any questions about your decision to testify or not testify?
>
> THE DEFENDANT: No, sir. I made the decision.
>
> THE COURT: You're firm in your decision not to testify?
>
> THE DEFENDANT: I made a decision. I thought about it before I made it.
>
> THE COURT: And that's what you'd like to do[,] is not testify?
>
> THE DEFENDANT: No, sir, I don't want to testify.

Once again, neither defendant nor his counsel raised the question of defendant's competency.

The jury found defendant guilty on four of seven charges. Following the verdict, defendant stipulated to being a habitual felon in exchange for a reduced sentence,

again confirming to the trial court that he had consulted with counsel and understood the charges, his rights, his possible defenses, and the proceedings before him.

Defendant acted similarly during sentencing. The trial court noted that defendant had "carr[ied] [him]self in a pleasant way" at trial, citing his good conduct as one reason for imposing the minimum sentence of fifty-one months. The trial court expressed optimism that defendant "w[ould] take advantage [of opportunities in prison] and . . . be out in four years." In response, defendant stated, "I hope to be out next year[,] but I understand, sir, and I appreciate you."

Defendant appealed to the Court of Appeals. He argued that the trial court's original competency evaluation order prevented him from being tried without first determining his competency under section 15A-1002 of the North Carolina General Statutes. *See generally* N.C.G.S. § 15A-1002(a)–(b)(1) (2023) (governing a criminal defendant's right to a competency hearing). The majority below rejected that argument, relying on this Court's decisions in *Young* and its progeny. *State v. Wilkins*, 287 N.C. App. 343, 348, 882 S.E.2d 454, 457 (2022); *see Young*, 291 N.C. at 566, 231 S.E.2d at 580 (holding that a criminal defendant could waive his statutory right to a competency hearing).

The dissent, however, agreed with defendant that *Young* and its progeny were distinguishable from his case. *Wilkins*, 287 N.C. App. at 356, 882 S.E.2d at 462–63 (Inman, J., dissenting). Instead, the dissent looked in part to this Court's decision in *State v. Sides*, 376 N.C. 449, 852 S.E.2d 170 (2020), in which this Court held that a

trial court's failure to conduct a competency hearing for a potentially incompetent defendant sua sponte violated her constitutional right and required a new trial. *Wilkins*, 287 N.C. App. at 355–56, 882 S.E.2d at 462 (citing *Sides*, 376 N.C. at 466, 852 S.E.2d at 182). Defendant appealed to this Court based on the dissent.[1]

The issue presented is whether defendant waived his statutory right to a competency hearing.[2] Section 15A-1002 of the North Carolina General Statutes governs that right. It provides, in relevant part:

> (a) The question of the capacity of the defendant to proceed may be raised at any time on motion by the prosecutor, the defendant, the defense counsel, or the court. The motion shall detail the specific conduct that leads the moving party to question the defendant's capacity to proceed.
>
> (b) (1) When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed. If an examination is ordered[,] . . . the hearing shall be held after the examination.

N.C.G.S. § 15A-1002(a)–(b)(1). We review questions of law de novo, considering the matter anew and freely substituting our own judgment for those of the lower courts. *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008).

---

[1] *See* N.C.G.S. § 7A-30(2) (2023), *repealed by* Current Operations Appropriations Act of 2023, S.L. 2023-134, § 16.21(d). The repeal of subsection 7A-30(2) only applies to cases filed with the Court of Appeals on or after 3 October 2023. *See* Current Operations Appropriations Act § 16.21(e).

[2] Defendant disclaimed a constitutional challenge at the Court of Appeals, *Wilkins*, 287 N.C. App. at 346, 882 S.E.2d at 456, and did so again before this Court. Therefore, our review only considers whether defendant waived his statutory right.

As this Court explained in *Young*, a defendant may generally waive a statutory right through "express consent, failure to assert it in apt time, or . . . conduct inconsistent with a purpose to insist upon it." *Young*, 291 N.C. at 567, 231 S.E.2d at 580 (quoting *State v. Gaiten*, 277 N.C. 236, 239, 176 S.E.2d 778, 781 (1970)). Ordinarily, a defendant waives a right if he fails to assert it to the trial court. *Id.* The record must show affirmative evidence of the defendant's assertion. *Id.*

In the instant case, defendant waived his statutory right to a competency hearing. He had several chances—over several years, with several attorneys, and in several procedural contexts—to assert the right, but never did so. Rather than remain in pretrial custody and wait for a competency evaluation, he instead chose to post bond and leave.[3] Even while defendant was out on bond, he and his counsel had several options at their disposal. For example, counsel could have moved to modify the competency order, or defendant could have checked himself into the hospital. But they did not take any of these actions.

Further, defendant repeatedly presented himself as competent at trial by making affirmative statements to that effect in the presence of counsel. Defendant stated, among other things, that he could hear and understand the trial court, was

---

[3] Of course, defendant had a right to leave pretrial custody once he satisfied the trial court's conditions of release. *See* N.C.G.S. § 15A-537(a) (2023) ("Following any authorization of release of any person [in pretrial custody], . . . any judicial official must effect the release of that person upon satisfying himself that the conditions of release have been met."). But as the State points out, defendant's decision to leave cuts both ways: once he posted bond, the State could not hold him in custody against his will. Upon choosing to leave custody, defendant became solely responsible for pursuing his competency evaluation.

not under the influence of alcohol or drugs, and thought about his trial decisions before making them. He assured the trial court that he had spoken with counsel and understood the charges, his rights, and his possible defenses. Nothing in the record indicates that defendant had any mental health issues before or after his pretrial custody in 2018, and nothing supports concluding that he was incompetent at the time of trial in 2021. *See State v. Allen*, 377 N.C. 169, 181, 856 S.E.2d 494, 504 (2021) (holding that a defendant is competent to stand trial if he is competent at the time of trial itself). To the contrary, the record affirmatively demonstrates that defendant's hearing, which occurred just one month after his arrest, was the only time his mental health was ever in controversy. For the next three-plus years, defendant interacted with his multiple lawyers and several judges. Not one questioned his competency.

These facts clearly indicate that defendant waived his statutory right to a competency hearing by "fail[ing] to assert it in apt time" and otherwise acting "inconsistent with a purpose to insist upon it." *See Young*, 291 N.C. at 567, 231 S.E.2d at 580. Rather than contest his competency with the trial court, defendant instead proceeded with trial and waited for a jury verdict. Only after the jury ruled against him did defendant raise the issue on appeal. As the majority at the Court of Appeals observed:

> If [defendant]'s counsel believed the competency evaluation was necessary[,] . . . there was ample opportunity to raise the issue and have the trial court act on it. By saving this argument for appeal, [defendant] was able to await the jury's verdict and then, after the verdict was unsatisfactory, seek a second bite at the apple by arguing

for a new trial.

*Wilkins*, 287 N.C. App. at 348, 882 S.E.2d at 458. Defendant's conduct squarely indicated that he was competent and ready to move forward with trial. Thus, he waived his statutory right to a competency hearing.

Our precedent over the last half century confirms that defendant waived his statutory right. For example, the trial court in *Young* ordered the defendant to undergo a competency evaluation, the competency hearing was not held, and the defendant never raised the issue at trial. *Young*, 291 N.C. at 566–67, 231 S.E.2d at 580. This Court concluded that the defendant waived his statutory right. *Id.* at 568, 231 S.E.2d at 581. Similarly, this Court held in *State v. King* that the defendant had waived his statutory right to a competency hearing when his counsel discussed competency at a pretrial hearing but did not pursue the issue beyond that initial mention. *State v. King*, 353 N.C. 457, 466, 546 S.E.2d 575, 584–85 (2001). Other cases citing *Young* reached similar conclusions. *See, e.g.*, *State v. Badgett*, 361 N.C. 234, 259, 644 S.E.2d 206, 221 (2007); *State v. Dollar*, 292 N.C. 344, 350–51, 233 S.E.2d 521, 525 (1977).

Like in *Young*, the trial court granted defendant's motion for a competency hearing, but the hearing was never held. Like in *King*, defendant's competency was briefly questioned before trial but subsequently abandoned. And like both of those cases, defendant waited until appeal to argue that the trial court violated his statutory right. The result is the same: defendant waived his right when he failed to

assert it at trial.

Defendant argues that this Court effectively overruled the *Young* line of cases in 2020 when it issued the *Sides* decision. But defendant's reliance on *Sides* is misplaced. The Court there explicitly limited its holding to the right to a competency hearing under the Federal Constitution, making only passing references to the statutory right protected by section 15A-1002. *See Sides*, 376 N.C. at 457–58, 852 S.E.2d at 176. As the Court explained, it "need not resolve the parties' dispute regarding the [statutory] issue" because "[the] defendant possessed a constitutional due process right."[4] *Id.*

This distinction is important because the constitutional and statutory rights to a competency hearing are not equivalent. Though defendants can generally waive constitutional rights in the same way as statutory rights, *see Young*, 291 N.C. at 567, 231 S.E.2d at 580, the Supreme Court of the United States has explained that the constitutional right to a competency hearing cannot be waived, *see, e.g.*, *Pate v. Robinson*, 383 U.S. 375, 384, 86 S. Ct. 836, 841 (1966). But for the constitutional right to apply, there must be substantial evidence of the defendant's incompetency. *See Young*, 291 N.C. at 568, 231 S.E.2d at 581 (citing *Crenshaw v. Wolff*, 504 F.2d 377, 378 (8th Cir. 1974)). In contrast, the statutory right under section 15A-1002 does not

---

[4] The dissent at the Court of Appeals in this case acknowledged the limited holding in *Sides* as well. *See Wilkins*, 287 N.C. App. at 355, 882 S.E.2d at 462 (Inman, J., dissenting) ("[O]ur Supreme Court has most recently erred on the side of vindicating a defendant's right to a competency determination—albeit on constitutional rather than statutory grounds . . . .").

specify an evidentiary requirement. *See* N.C.G.S. § 15A-1002.

In recognition that the two sources of the right are governed by different criteria, our caselaw has carefully delineated between the statutory and constitutional analyses. *See, e.g.*, *Badgett*, 361 N.C. at 259–60, 644 S.E.2d at 221 (holding first that the defendant waived his statutory right because he never raised the issue at trial, then separately concluding that his constitutional right was not violated because there was not substantial evidence of incompetency). *Sides*—a case decided on purely constitutional grounds—did not overrule *Young*, which addressed both the constitutional and statutory standards. Thus, *Sides* has no bearing on the entirely statutory argument defendant raises here, and *Young* continues to control. Under *Young*, defendant waived his statutory right.

Defendant waived his statutory right to a competency hearing and did not raise a constitutional challenge on appeal. The decision of the Court of Appeals is affirmed.

AFFIRMED.

Justice DIETZ did not participate in the consideration or decision of this case.

Justice EARLS dissenting.

Because the majority faults Mr. Wilkins for the State's failure to follow its duties, I respectfully dissent. This case turns on a distinct statutory issue: the State's obligation to carry out, and the trial court's duty to oversee, a court-ordered competency evaluation. Section 15A-1002 places unmistakable obligations on the trial court and automatically preserves Mr. Wilkins's claim for appellate review. The majority's unflinching reliance on past cases misses the mark—those decisions differ in critical ways, both factually and legally, from this one. Finally, the majority improperly treats Mr. Wilkins's conduct as evidence of his competence, a circular argument that presumes the very competence that remains unresolved due to the State's failure to act. For these reasons, I dissent from this Court's judgment and would reverse the decision of the Court of Appeals.

## I.   The Statutory Protections for Mentally Ill Defendants

The General Assembly has instructed the courts of this state to take special steps to protect an acutely vulnerable group of defendants—those who suffer from mental illness. Indeed, our statutes recognize that

> [n]o person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner.

N.C.G.S. § 15A-1001(a) (2023). The statutory framework for competency evaluations is as clear as it is essential. When a defendant's competence to stand trial is questioned, N.C.G.S. § 15A-1002(b)(1) directs the trial court to act. The court "shall hold a hearing to determine the defendant's capacity to proceed" or, when more evidence is necessary, order a forensic assessment. N.C.G.S. § 15A-1002(b)(1), (1a) (2023). This mandate exists for a critical reason: when capacity is disputed, a defendant's ability to meaningfully participate in their defense must be established by evidence rather than blithely assumed. A trial conducted without resolving genuine concerns about competence imperils fundamental principles of fairness. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ("Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." (cleaned up)).

Mr. Wilkins's case falls squarely within this statutory scheme. But the issue before this Court is more specific—and more nuanced—than the majority acknowledges. Mr. Wilkins focuses on the State's failure to comply with, and the trial court's failure to enforce, a judicial order requiring a competency evaluation. That order was not issued lightly—it was grounded in credible worries about Mr. Wilkins's capacity to stand trial.

The facts confirm that these concerns were real. While in custody, Mr. Wilkins

began exhibiting conduct that alarmed both the jail staff and him. Jail employees flagged his "odd behavior" and urged that he be evaluated. Mr. Wilkins seconded those worries, telling his attorney that he was "losing his grip on reality." Defense counsel observed troubling signs, too. So troubling, in fact, that on 15 March 2018, defense counsel moved for a competency evaluation under N.C.G.S. § 15A-1002(a), outlining specific conduct that raised questions about Mr. Wilkins's capacity. Echoing others' concerns, defense counsel recounted Mr. Wilkins's rapid mood swings, elevated speech, and confusion about his circumstances.

That same day, the trial court held a hearing on the motion. At the hearing, defense counsel explained that, beyond his own observations, "[t]here's been some reports from the jail, Judge, that Mr. Wilkins has been exhibiting some odd behaviors." The State did not oppose the motion for an evaluation. In fact, defense counsel noted that an evaluation was in everyone's interests, as it "was something that the staff at the jail ha[d] been requesting" for about a week. Based on this evidence, the trial court found that Mr. Wilkins's competence was in question and ordered an evaluation.

The trial court's order was clear and specific. It required a forensic evaluator to submit a written report with "findings and recommendations" on Mr. Wilkins's capacity to proceed. It also directed the sheriff's office to transport Mr. Wilkins to Central Regional Hospital in Butner for the evaluation and to return him to custody afterward. The court even acknowledged during the hearing that transportation was

necessary because Mr. Wilkins was in jail.

But the State disregarded the court's order. The sheriff's office failed to transport Mr. Wilkins to Central Regional Hospital as directed, leaving the "Return of Service" section of the order blank. Instead, the State, acting on an ex parte order, transferred Mr. Wilkins to a "safekeeping" unit at Central Prison in Raleigh on 21 March 2018.

The trial court, meanwhile, compounded this failure. Despite statutory deadlines for completing evaluations, the court failed to follow up. It did not ask whether Mr. Wilkins had been transported, whether the evaluation had been conducted, or why the State ignored its directive. Then, on 28 March 2018, Mr. Wilkins posted bond and was released from custody—without ever receiving the court-ordered evaluation.

This sequence of events reveals the scope of the statutory failure. The State defied a direct court order. The trial court, in turn, neglected its duty to enforce compliance. As a result, Mr. Wilkins, whose competence remained in question, was denied the professional evaluation needed to determine whether he could meaningfully participate in his defense. These facts reveal a breakdown of statutory duties at every level—duties designed to protect precisely the type of defendant whose capacity to proceed is in doubt.

II. **Section 15A-1002 automatically preserves Mr. Wilkins's appeal because it mandates that the trial court oversee and complete judicially ordered competency evaluations.**

In its haste to discard Mr. Wilkins's appeal, the majority overlooks the distinct statutory right at issue and the trial court's unique role in enforcing it. A closer look at the statutory regime shows that Mr. Wilkins did not waive his claim because the right to a court-ordered competency evaluation is automatically preserved for appeal. As this Court has long recognized, when "a statute is clearly mandatory, and its mandate is directed to the trial court, the statute automatically preserves statutory violations as issues for appellate review." *In re E.D.*, 372 N.C. 111, 117 (2019) (cleaned up) (quoting *State v. Hucks*, 323 N.C. 574, 579 (1988)). Our cases have identified two classes of statutory mandates: (1) laws that "require[ ] a specific act by a trial judge," or (2) laws that "leave[ ] no doubt that the legislature intended to place the responsibility on the judge presiding at the trial or at specific courtroom proceedings that the trial judge has authority to direct." *Id.* at 121 (cleaned up). Section 15A-1002 satisfies both conditions. Its plain language assigns the trial court—not the defendant—the duty to ensure that a court-ordered evaluation is completed and to resolve the competency concerns that prompted it.

The statute makes the court's obligations clear. When competence is questioned and the trial court orders an evaluation under subsections (b)(1a) or (b)(2), the court "shall" defer a competency hearing until after the evaluation is done. N.C.G.S. § 15A-1002(b)(1). These provisions are phrased in mandatory terms. If a defendant's capacity is so disputed that the trial court seeks professional input, then the court must see the evaluation through.

Section 15A-1002 reinforces the court's responsibility at every turn. Subsection (b)(1a) speaks to evaluations for defendants charged with a misdemeanor or felony, allowing the court to appoint "impartial medical experts" to "examine the defendant and return a written report describing the present state of the defendant's mental health." N.C.G.S. § 15A-1002(b)(1a). As well, the court may "call any expert so appointed to testify" at the post-evaluation competency hearing. *Id.* Felony defendants may be detained before an evaluation for up to sixty days in a state mental health facility, so long as the trial court makes a specific finding that a facility-based evaluation is more suitable than an outpatient examination under subsection (b)(1a). N.C.G.S. § 15A-1002(b)(2) (2023). Subsection (b)(4) inserts the trial court into the mechanics of the evaluation, instructing that a judge who mandates an evaluation "shall order the release of relevant confidential information to the examiner." N.C.G.S. § 15A-1002(b)(4) (2023). The same provision places control over confidential records in the trial court's hands, ensuring that the court—not the parties—determines what information examiners may access and how they may do so. *See id.*

To make sure evaluations happen promptly, the statute sets firm deadlines for when "[r]eports made to the court pursuant to this section shall be completed and provided to the court." N.C.G.S. § 15A-1002(b2) (2023). Subsection (b2) imposes timelines for filing evaluation reports after the examination is completed: ten days for in-custody misdemeanants, twenty days for out-of-custody misdemeanants, and thirty days for felony defendants, regardless of custody. N.C.G.S. § 15A-1002(b2)(1)–

(2). Subsection (d) directs that all reports "shall be forwarded to the clerk of superior court in a sealed envelope addressed to the attention of a presiding judge." N.C.G.S. § 15A-1002(d) (2023). And the contents of the report are confidential and "kept under such conditions as are directed by the court." *Id.*

When the evaluation is complete, the court must resolve the competency questions that prompted it to act. Subsection (b)(1) mandates a post-evaluation hearing, N.C.G.S. § 15A-1002(b)(1), and subsection (b1) requires the court to make findings of fact to support its determination of a defendant's capacity, N.C.G.S. § 15A-1002(b1) (2023). The legislature made clear that competency decisions belong exclusively to the court—the parties "shall not be allowed to stipulate that the defendant lacks capacity to proceed." *Id.* Section 15A-1002's provisions are unmistakably directed at the trial court and itemize the court's central role and specific duties to manage competency evaluations from start to finish.

The majority nonetheless faults Mr. Wilkins for bonding out of prison. It asserts that when he "cho[se] to leave custody," he became "solely responsible for pursuing his competency evaluation."[1] But section 15A-1002 does not key its statutory mandate to a defendant's custody status.

---

[1] This assertion rests on circular reasoning because it assumes that Mr. Wilkins was competent even though he was never evaluated. This point is addressed in more detail below, but I underscore the perverse logic of placing the burden on a person potentially suffering from mental illness to obtain a competency examination mandated by a court. In some cases, people who are mentally ill may not realize that they need treatment or understand the value of an evaluation.

The statutory timeframes make this clear. Subsection (b2)(1) sets deadlines for when an evaluator must file their report with the court after examining the defendant. N.C.G.S. § 15A-1002(b2)(1). Critically, the statute accounts for custody status—it allows ten days to file when a misdemeanant defendant is in state custody but extends the deadline to twenty days when the defendant is not. *Id.* For a felony defendant, the deadline is thirty days, regardless of custody. N.C.G.S. § 15A-1002(b2)(2). These timeframes show that the legislature recognized practical challenges, like scheduling evaluations for defendants who are no longer confined. The statute thus gives courts some flexibility based on the custody status and type of charge. Yet it imposes no lesser duty on the trial court to see the process through. Custody may affect logistics—but not the court's core responsibility.

Subsection (c) confirms this by authorizing temporary confinement orders while the competency issue is being resolved, allowing the trial court to ensure the process is not disrupted. N.C.G.S. § 15A-1002(c) (2023). This provision confirms that overseeing competency determinations is the court's obligation—not something that shifts based on a defendant's custody status. For if custody relieved the court of its duty, as the majority claims, subsection (c) would be unnecessary. Together, these statutory directives show that custody status does not affect the trial court's mandate to ensure the completion of the competency examinations it orders.

Section 15A-1002's comprehensive framework leaves no room for doubt: when a trial court orders a competency evaluation, it must see the process through. A

defendant's release on bond does not shift that burden. The statute's timelines, its grant of authority to secure defendants temporarily, and its instructions for channeling reports to the presiding judge all reflect the legislature's intent to keep responsibility with the trial court. In short, section 15A-1002 requires "specific act[s]" by the trial court and confirms its central role and singular responsibility to oversee judicially ordered competency evaluations. *See In re E.D.*, 372 N.C. at 121. Because of that statutory mandate, the trial court's failure to secure an examination of Mr. Wilkins's competence—an examination that it ordered—was automatically preserved for appeal, and Mr. Wilkins did not forfeit his right to challenge that dereliction of duty.

### III.    Legally and factually, Mr. Wilkins's case differs from the precedents cited by the majority.

The majority resolves this appeal by mechanically importing the framework used in past competency cases. That black-and-white approach ignores the unique facts and distinct statutory mandate involved in Mr. Wilkins's case. Unlike *Young*, *King*, *Dollar*, and *Badgett*—cases where capacity was either never raised or where a professional examination found the defendant competent—this appeal involves a breakdown in the statutory framework and the defiance of a judicial mandate. Because the State and the trial court neglected their obligations, Mr. Wilkins's competency was never assessed, leaving the question unresolved both before and during trial. This failure separates Mr. Wilkins's case from our prior decisions in this realm and places the blame squarely on the State and the trial court.

Begin with *Young* and *Dollar*. In *Young*, the trial court ordered a competency evaluation, and the examiner deemed the defendant competent. *State v. Young*, 291 N.C. 562, 566–67 (1977). No evidence suggested otherwise, and neither the defendant nor his counsel challenged the findings or sought a post-evaluation hearing. *Id.* at 567–68. Similarly, in *Dollar*, a court-ordered evaluation confirmed the defendant's capacity to proceed, and the defense raised no objections. *State v. Dollar*, 292 N.C. 344, 350–51 (1977). In both cases, we held that the defendants waived their right to a post-evaluation hearing by failing to contest the diagnostic findings or request further proceedings. In both cases, too, we emphasized that the completed evaluations provided professional assessments, unchallenged and uncontradicted, finding the defendants were "competent to stand trial, understood the charges and w[ere] able to cooperate with [their] attorney[s]." *See Young*, 291 N.C. at 568.

Not so here. In Mr. Wilkins's case, the trial court ordered an evaluation, but that order went unfulfilled. Unlike in *Young* or *Dollar*, the court developed no evidence on the issue of competence. Without the evaluation, no professional assessment was available to either confirm or dispute Mr. Wilkins's ability to proceed. The defense had no diagnostic finding to challenge—or accept—because no evaluation ever occurred. What happened here, unlike in *Young* and *Dollar*, was a dissolution of the statutory process by the State and court's compounded inaction.

The majority's reliance on *King* and *Badgett* fares no better. In *King*, the trial court asked defense counsel whether competence was an issue. *State v. King*, 353

N.C. 457, 466 (2001). Neither counsel nor the defendant questioned the defendant's capacity to stand trial, sought an evaluation, or asked for a competency hearing. *Id.* In *Badgett*, too, nothing in the record prompted the "prosecutors, defense counsel, defendant, or the court" to "raise[ ] the question of defendant's capacity to proceed at *any* point during the proceedings." *State v. Badgett*, 361 N.C. 234, 259 (2007) (emphasis added). Nor did the defendant or his attorney move for an evaluation or request a hearing. *Id.* In both cases, this Court found that the defendants waived the issue by failing to assert their rights. *See id.*

Again, that is not what happened here. Mr. Wilkins's lawyer filed a detailed motion, flagging serious concerns about his client's competence. Those concerns were supported by observations from jail staff. The trial court agreed that an evaluation was warranted and issued an order accordingly. Unlike in *King* and *Badgett*, Mr. Wilkins's defense counsel did not passively accept the status quo. Counsel brought the issue of competence to the court's attention and sought the necessary evidence to resolve it. The failure in this case lies with the State, which disregarded the court's directive, and with the court itself, which failed to enforce compliance.

These distinctions are crucial. In *Young* and *Dollar*, the trial courts followed through on their orders, obtaining professional evaluations that settled the issue of competence. In *King* and *Badgett*, the defendants never raised their statutory rights and thus forfeited them. But here, the system collapsed at the hands of those tasked with upholding it. The trial court recognized the need to evaluate Mr. Wilkins's

capacity, ordered an examination, and then failed to ensure that its directive was carried out. The State's noncompliance with that order, coupled with the court's inaction, left Mr. Wilkins without the statutory protections meant to safeguard defendants in situations like this. The majority's comparison to other cases cannot paper over the fundamental breakdown that happened here.

## IV. Inferring waiver from Mr. Wilkins's conduct puts the cart before the horse.

The majority infers waiver from Mr. Wilkins's behavior during trial, concluding that his actions "squarely indicated that he was competent and ready to move forward with trial." That conclusion rests on a circular premise. Waiver requires competence. *See State v. Harvin*, 382 N.C. 566, 585 (2022) (defining "waiver" as "an intentional relinquishment or abandonment of a known right or privilege" (cleaned up)); *State v. Sides*, 376 N.C. 449, 459 (2020) ("Logically, competency is a necessary predicate to voluntariness."). A defendant who lacks the capacity to understand the proceedings or assist in his own defense cannot knowingly relinquish a statutory right. *See id.* ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently waive his right to have the court determine his capacity to stand trial." (cleaned up) (quoting *Pate v. Robinson*, 383 U.S. 375, 384 (1966))).

That is true regardless of whether competence is raised under a statutory or constitutional standard. For both types of legal interests, voluntariness is an essential ingredient to waiver. *Cf. State v. Saldierna*, 369 N.C. 401, 405–07 (2016)

(examining whether "defendant knowingly and voluntarily waived" both his constitutional and statutory rights); *see also State v. Gibson*, 342 N.C. 142 148–50 (1995) (same); *In re K.M.W.*, 376 N.C. 195, 208–10 (2020) (assessing whether the respondent-parent voluntarily waived their "statutory right to counsel for parents involved in termination proceedings").

Here, by ordering the evaluation, the trial court acknowledged doubts about Mr. Wilkins's competence—doubts that required professional assessment. Without that examination, those doubts remain unanswered. By pointing to Mr. Wilkins's conduct to prove his capacity, the majority assigns dispositive weight to conduct that may itself be the product of incompetence. This is circular in the extreme. Much like a snake eating its own tail, inferring waiver from Mr. Wilkins's actions assumes the very competence the evaluation was supposed to determine. The majority's analysis is not just illogical; it turns section 15A-1002 on its head, allowing conduct that may well reflect incompetence to override the statutory duties to ensure a defendant's capacity to stand trial.

## V. Conclusion

To conclude that Mr. Wilkins waived his right is to overlook the trial court's responsibility to enforce its own order and the State's duty to follow it. It was not Mr. Wilkins who ignored the court's directive, nor was it his responsibility to hold the State and the court to their lawful duties. The majority's reasoning effectively absolves the State and the trial court of their obligations and shifts the burden onto

the very person whose competence was in question. Here, section 15A-1002's mandates are clear, and their violation is even more so—not by Mr. Wilkins, but by the State and the trial court. I respectfully dissent.

Justice RIGGS joins in this dissenting opinion.